[No. B157323. Second Dist., Div. Five. Apr. 17, 2003.]

CONTINENTAL INSURANCE CO., Plaintiff and Respondent, v. COLUMBUS LINE, INC., Defendant and Appellant.

**COUNSEL**

Russell, Mirkovich & Morrow, Joseph N. Mirkovich and Margaret E. Morrow for Defendant and Appellant.

Gibson Robb & Lindh, Stanley L. Gibson and Joshua E. Kirsch for Plaintiff and Respondent.

OPINION

TURNER, P. J.—

## I. INTRODUCTION

Defendant, Columbus Line, Inc., appeals from a $189,328 judgment, plus interest, entered after a court trial. The trial court found defendant was liable for $189,328, plus interest, for damage to a yacht mast owned by America True. The action was brought by plaintiff, Continental Insurance Co., the mast owner's insurer. Plaintiff filed a summary adjudication motion challenging defendant's sixth affirmative defense. We conclude: plaintiff failed to sustain its summary adjudication burden of production; the summary adjudication motion should have been denied; and the judgment must be reversed.

## II. BACKGROUND

The complaint alleged that defendant is a common carrier. On July 16, 1999, defendant received a mast as cargo. Defendant was to carry the mast from Los Angeles, California to Auckland, New Zealand. Before being loaded on board defendant's ship, the mast was damaged. The damage was so severe that the mast could not be loaded on defendant's ship and carried to New Zealand. The mast's value depreciated by $189,328 as a result of the damage. Plaintiff agreed to indemnify the mast owner for loss or damage to the cargo while in transit. Plaintiff paid the mast owner $189,328. Defendant has refused to pay plaintiff for the damage to the mast.

Defendant answered the complaint and asserted a number of affirmative defenses including the one at issue here, which is whether plaintiff's damages were limited to $500 based on the Carriage of Goods by Sea Act and a bill of lading. Specifically, defendant relied on title 46 United States Code Appendix section 1304(5) which states in part: "Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier."

On September 24, 2001, plaintiff filed a summary adjudication motion, which sought a ruling that defendant's sixth affirmative defense was without

merit. In addition to the language in the bill of lading, which will be related shortly, the sole evidence relied upon by plaintiff was as follows: the complaint alleged damage to cargo in transit from Los Angeles to Auckland, New Zealand; the sixth affirmative defense alleged that defendant's liability was limited to $500 pursuant to the Carriage of Goods by Sea Act; defendant alleged that the $500 limitation existed because of language in the bill of lading and tariff; no tariff had been produced by defendant; and defendant's standard bill of lading did not contain any statement that its liability was limited to $500 or any other amount.

Paragraph 3 of the bill of lading states in part: "3. RESPONSIBILITY; APPLICABLE LEGISLATION [¶] a) Except as otherwise provided herein, the Carrier shall be responsible for the Goods from the time received at the Port of Loading until delivered (or should have been delivered ) at the Port of Discharge and also during any previous or subsequent period of carriage performed under this Bill of Lading, subject to the provisions of any legislation compulsorily applicable to this Bill of Lading (1) which gives effect to the Hague Rules contained in the International Convention on the Unification of Certain Rules Relating to Bills of Lading dated at Brussels, August 25, 1924, including the specific adaptations thereof, such as the Carriage of Goods by Sea Act of the United States (hereinafter 'COGSA') or (2) which gives effect to the said Rules as amended by the Protocols to Amend the International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading, dated at Brussels, February 23, 1968 (the 'Visby Amendments') and December 21, 1979 (the 'SDR Protocol'), including, if compulsorily applicable, the Australian Carriage of Goods by Sea Act, 1991 or (3) where the Hague Rules, adaptations thereof or Hague-Visby-Amendments (including the SDR Protocol) are not compulsorily applicable, this Bill of Lading shall take effect subject to any national law which may be in force at the Port of Loading or place of issue of the Bill of Lading making the United National Convention on the Carriage of Goods by Sea [Act,] 1978 (the 'Hamburg Rules') compulsorily applicable to this Bill of Lading, in which case this Bill of Lading shall have effect subject to the Hamburg Rules which shall nullify any stipulation derogating therefrom to the detriment of the Merchant. The applicable legislation/national law and any amendments shall govern during the Carrier's entire period of responsibility. [¶] b) In the absence of compulsorily applicable legislation/national law, the 'Hague Rules 1924' shall govern from the time received at the Port of Loading until the time delivered at the Port of Discharge and during all waterborne transport, including multimodal transport, but as to all non-water multimodal transport, except as stated above or elsewhere herein. Carrier's liability shall not in any event exceed 2.5 SDRs (Special Drawing Rights) per kilo of gross weight of the Goods."

In addition, paragraph 17 of the bill of lading provides: "17. LIMITA-TION OF LIABILITY [¶] The limitation of liability which shall be applicable and to which the Carrier shall be entitled is that set forth in the legislation/national law which is compulsorily applicable under the circumstances. In the absence of compulsorily applicable legislation/national law, the limitation applicable per Clause 3. b) hereof shall govern and shall also extend to Goods shipped in bulk. [¶] Where the Hague Rules, 1924 or COGSA, 1936 is applicable, as per Clause 3. a) (1) hereof, Carrier's liability shall be limited in accordance therewith, which limitation shall also apply to a Container which, although furnished by the Carrier, is characterized as a package or a lump sum freight is assessed, regardless of any numerical reference which may appear elsewhere on the reverse side hereof, and conclusively to a Container which is not furnished and/or stuffed by Carrier, unless the nature of the Goods and valuation thereof shall have been declared by Merchant before shipment, inserted in the Bill of Lading (in special box entitled 'Declared value' on reverse side hereof) and extra freight paid if required. In no event shall the limitation amount exceed the Declared valued. In the event any part of this provision is held invalid during a period when compulsory legislation/national law shall apply, it shall nevertheless apply during all non-compulsory periods during which the Carrier bears responsibility for the Goods. [¶] Nothing herein shall be construed as waiver of limitation."

Defendant alleges that its liability, if any, is limited to $500 for the shipment as asserted in its sixth affirmative defense pursuant to the Carriage of Goods by Sea Act. Relying on *Komatsu, Ltd. v. States S.S. Co.* (9th Cir. 1982) 674 F.2d 806, 809, plaintiff argued in its moving papers: "A carrier of cargo cannot limit its liability by incorporating a statute or other documents by reference into its bill of lading. Under established law [Ninth Circuit law] the carrier must expressly state the dollar amount of the limitation in the bill of lading. Since [defendant's] bill of lading failed to do so, [defendant] cannot limit its liability."

The trial court summarily adjudicated that there was no merit to the sixth affirmative defense based on the bill of lading limitation of liability provision. The matter then proceeded to a court trial. In a statement of decision, the trial court stated it had summarily adjudicated that the sixth affirmative defense lacked merit because the bill of lading did not contain valid limitation language in that it merely incorporated the Carriage of Goods by Sea Act by reference, which was insufficient under *Komatsu, Ltd. v. States S.S. Co., supra,* 674 F.2d at page 809. After rejecting defendant's additional affirmative defenses, the trial court found that plaintiff was entitled to judgment in the amount of $189,328, plus interest. Defendant's timely appeal from the judgment challenges the trial court's ruling summarily adjudicating that the sixth affirmative defense based on the Carriage of Goods by Sea Act $500 damage limitation had no merit.

III. DISCUSSION

A. *Standard of Review*

█ In *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850-851 [107 Cal.Rptr.2d 841, 24 P.3d 493], the Supreme Court described a party's burdens on summary judgment or adjudication motions as follows: "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. That is because of the general principle that a party who seeks a court's action in his favor bears the burden of persuasion thereon. [Citation.] There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof . . . . [¶] . . . [T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . . A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.]" (Fns. omitted; see *Kids' Universe v. In 2Labs* (2002) 95 Cal.App.4th 870, 871, 878 [116 Cal.Rptr.2d 158].) We will address more specifically the burden of production duties of a moving party later in this opinion.

█ We review the trial court's decision to grant the summary adjudication motion de novo. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65, 67-68 [99 Cal.Rptr.2d 316, 5 P.3d 874]; *Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1188 [91 Cal.Rptr.2d 35, 989 P.2d 121], disapproved on another point in *Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 853, fn. 19.) The trial court's stated reasons for granting summary adjudication are not binding on us because we review its ruling, not its rationale. (*Szadolci v. Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19 [17 Cal.Rptr.2d 356]; *Barnett v. Delta Lines, Inc.* (1982) 137 Cal.App.3d 674, 682 [187 Cal.Rptr. 219].)

B. *Summary Adjudication Should Not Have Been Granted*

█ The liability of international carriers for loss or damage to cargo is regulated by the Carriage of Goods by Sea Act. (*Senator Linie Gmbh & Co. Kg v. Sunway Line, Inc.* (2d Cir. 2002) 291 F.3d 145, 153; *Travelers Indem. Co. v. Vessel Sam Houston* (9th Cir. 1994) 26 F.3d 895, 898.) The Second

Circuit Court of Appeals has described the Carriage of Goods by Sea Act as follows: "The U.S. Carriage of Goods by Sea Act . . . , which 'represents the codification of the United States' obligations under [the "Hague Rules"],' *J.C.B. Sales Ltd.* [*v. Wallenius Lines* (2d Cir.1997)] 124 F.3d [132,] 134, was enacted in 1936 and 'applies *ex proprio vigore* to all contracts for carriage of goods by sea between the ports of the United States and the ports of foreign countries,' *Nippon Fire & Marine Ins. Co. v. M.V. Tourcoing*, 167 F.3d 99, 100 (2d Cir.1999) (citing 46 U.S.C.App. §§ 1300, 1312)." (*Senator Linie Gmbh & Co. Kg v. Sunway Line, Inc., supra*, 291 F.3d at p. 153.) The United States Supreme Court has identified the purpose of the three obligations reflected in the Carriage of Goods by Sea Act in the following fashion: "The legislative history of the Act shows that it was lifted almost bodily from the Hague Rules of 1921, as amended by the Brussels Convention of 1924, 51 Stat. 233. The effort of those Rules was to establish uniform ocean bills of lading to govern the rights and liabilities of carriers and shippers *inter se* in international trade. *Ibid.*" (*Herd & Co. v. Krawill Machinery Corp.* (1959) 359 U.S. 297, 301 [79 S.Ct. 766, 769, 3 L.Ed.2d 820], fn. omitted; see *Sunkist Growers, Inc. v. Adelaide Shipping Line, Ltd.* (9th Cir. 1979) 603 F.2d 1327, 1338.) Pursuant to the Carriage of Goods by Sea Act, a carrier is liable for $500 per package or per customary freight unit. (46 U.S.C. Appen. § 1304(5).) Title 46 United States Code Appendix section 1304(5) provides in part: "Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before the shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier. . . ." A carrier's liability, however, may be increased if the shipper declares on the bill of lading the nature and value of the goods shipped and pays a higher freight rate. (*Travelers Indem. Co. v. Vessel Sam Houston, supra*, 26 F.3d at p. 898; *Carman Tool & Abrasives, Inc. v. Evergreen Lines* (9th Cir. 1989) 871 F.2d 897, 899.)

 Paragraphs 3 and 17 of the bill of lading clearly incorporated the Carriage of Goods by Sea Act by reference. (See pp. 1194-1195, *ante*.) They also extended the limitation of liability provisions to the carrier's *entire* period of responsibility. Accordingly, the Carriage of Goods by Sea Act applies to this case. (46 U.S.C. Appen. § 1307; *Hartford Fire v. Orient Overseas Containers Lines* (2d Cir. 2000) 230 F.3d 549, 557; *Mori Seiki USA, Inc. v. M. V. Alligator Triumph* (9th Cir. 1993) 990 F.2d 444, 447; *Institute of London Underwriters v. Sea-Land Serv.* (9th Cir. 1989) 881 F.2d 761, 764.)

## C. *The Limitation of Liability Provision in This Case*

The controversy in this case centers around the effect of the language in the bill of lading, which incorporates the Carriage of Goods by Sea Act by reference but does not specifically contain the $500 per package limitation language. Federal decisional authority construing the Carriage of Goods by Sea Act is both consistent and inconsistent. Federal decisional authority is consistent in one respect. No restrictive bill of lading language concerning the scope of carrier liability may be enforced unless there has been a fair opportunity on the part of the shipper to negotiate a more favorable rate. █ The fair opportunity doctrine was articulated by the United States Supreme Court in *New York, N.H. & H.R. Co. v. Nothnagle* (1953) 346 U.S. 128, 135-136 [73 S.Ct. 986, 990, 97 L.Ed. 1500]. (See *HIH Marine Ins. Services, Inc. v. Gateway Freight Services* (2002) 96 Cal.App.4th 486, 492 [116 Cal.Rptr.2d 893].) The fair opportunity doctrine was explained by the Second Circuit as follows: "Under the 'fair opportunity' doctrine, a shipper must have had a 'fair opportunity' to declare a higher liability value for its cargo in order for a carrier to limit its liability under COGSA. *See General Elec. Co. v. MV Nedlloyd*, 817 F.2d 1022, 1028 (2d Cir.1987)." (*Hartford Fire v. Orient Overseas Containers Lines, supra,* 230 F.3d at p. 553.) No federal circuit has expressly held that the fair opportunity doctrine is inapplicable to a bill of lading subject to the Carriage of Goods by Sea Act. (Cf. *Henley Drilling Co. v. McGee* (1st Cir. 1994) 36 F.3d 143, 146, fn. 5 [declining to address the question whether the fair opportunity doctrine ought to apply under any circumstances to Carriage of Goods by Sea Act litigation]; *Carman Tool & Abrasives, Inc. v. Evergreen Lines, supra,* 871 F.2d at p. 900, fn. 6 [questioning whether the fair opportunity requirement ought to apply at all in Carriage of Goods by Sea Act lawsuits involving commercially knowledgeable litigants].)

The inconsistent application of federal law arises as to whether a mere reference in the bill of lading to the Carriage of Goods by Sea Act constitutes prima facie evidence that a fair opportunity to declare a higher liability value on the cargo has been afforded the shipper. The Ninth Circuit Court of Appeals holds that mere reference to the Carriage of Goods by Sea Act in a bill of lading is not prima facie evidence of a fair opportunity to negotiate for a higher value. (*Komatsu, Ltd. v. States S.S. Co., supra,* 674 F.2d at p. 809; *Pan Am. World Airways v. Cal. Stevedore & Ballast* (9th Cir. 1977) 559 F.2d 1173, 1177.) By contrast, other circuits have held that reference to the United States Carriage of Goods by Sea Act limitation on liability constitutes prima facie evidence that a fair opportunity to declare a higher liability value on the cargo was afforded the shipper. (See *Insurance Co. of North America v. M/V Ocean Lynx* (11th Cir. 1990) 901 F.2d 934, 939; *Cincinnati Milacron, Ltd. v. M/V American Legend* (4th Cir. 1986) 784 F.2d 1161, 1166

(dis. opn. of Phillips, J.) ["it does not seem unduly burdensome to impute to shippers knowledge of all of the COGSA's terms" as incorporation by reference], rev. en banc (4th Cir. 1986) 804 F.2d 837 (adopting dis. opn. of Phillips, J.); *Wuerttembergische v. M/V Stuttgart Express* (5th Cir. 1983) 711 F.2d 621, 622; *Brown & Root, Inc. v. M/V Peisander* (5th Cir. 1981) 648 F.2d 415, 420.) In their initially filed briefs, the parties asked us to adopt either the majority rule or the minority Ninth Circuit standard. That issue is not ripe for determination because plaintiff's moving papers failed to shift the burden of production to defendant concerning the enforceability of the bill of lading limitation of liability provision. The enforceability of a limitation of liability provision in a Carriage of Goods by Sea Act case depends upon whether a fair opportunity was afforded the shipper to secure greater protection than that set forth in the bill of lading. The bill of lading language is merely the first step in determining the enforceability of a limitation of liability provision in a Carriage of Goods by Sea Act case.

Even under the Ninth Circuit formulation, a bill of lading limitation on liability provision subject to the Carriage of Goods by Sea Act is fully enforceable if there has been a fair opportunity by the shipper to negotiate for greater coverage. All the Ninth Circuit rule holds is that merely referring to the Carriage of Goods by Sea Act in the bill of lading without expressly reciting its terms which includes the $500 limitation or utilizing words to the same effect does not create a prima facie evidence that a fair opportunity to negotiate has been extended to the shipper. (*Vision Air Flight Service, Inc. v. M/V National Pride* (9th Cir. 1998) 155 F.3d 1165, 1168; *Komatsu, Ltd. v. States S.S. Co., supra,* 674 F.2d at p. 809.) In other words, if a fair opportunity to negotiate for greater protection was extended to the shipper in this case, the sixth affirmative defense had merit.

In the present case, in its moving papers, plaintiff presented no evidence as to whether a fair opportunity was extended to the shipper to negotiate for a higher limitation of liability. As noted previously, the initial burden of production rested with plaintiff to demonstrate that the sixth affirmative defense premised upon the $500 Carriage of Goods by Sea Act limitation barred a greater recovery. The initial burden of production has been defined by the California Supreme Court as follows: "[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. . . . [¶] . . . [T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact . . . . Further, although not expressly, the 1992 and 1993 amendments impliedly provide for a burden of production *to make a prima facie showing.* A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.] No

more is called for." (*Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at pp. 850-851, original italics, fns. omitted; accord, *Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1303-1304 [130 Cal.Rptr.2d 347] ["As the party moving for summary judgment, the university bore an initial burden of production of a prima facie showing that there is no triable issue of material fact in this case and it is entitled to judgment as a matter of law. Only if the university carried that burden was plaintiff faced with a burden of production of her own—to make a prima facie showing of the existence of a triable issue of material fact"].)

All plaintiff presented was evidence that the bill of lading did not comply with the Ninth Circuit requirement that the express language of the Carriage of Goods by Sea Act appear in the bill of lading, including the $500 limitation, or words to the same effect. Plaintiff presented no evidence indicating the shipper was denied the fair opportunity to negotiate for a greater limitation. Nor did defendant cite evidence in its separate statement which shed any light on the fair opportunity to negotiate question. Rather, plaintiff merely relied on the language of the bill of lading which proves nothing about the absence of a fair opportunity by the shipper to negotiate for more favorable terms. Plaintiff presented no evidence defendant would be unable to document that the shipper was denied the fair opportunity to seek greater protection from loss. Hence, the burden of production never shifted to defendant to produce any evidence on the subject. Because there was no evidence that the shipper was denied the opportunity negotiate for a more favorable limitation of liability, plaintiff failed to make a prima facie case that the sixth affirmative defense was without merit. As result, plaintiff's summary adjudication motion should have been denied.

## IV. DISPOSITION

The judgment is reversed. Upon issuance of the remittitur, the trial court is to enter an order denying the summary adjudication motion. The court may then proceed to resolve the issue of the sixth affirmative defense. Defendant, Columbus Lines, is to recover its costs on appeal from plaintiff, Continental Insurance Company.

Armstrong, J., and Mosk, J., concurred.

On May 2, 2003, the opinion was modified to read as printed above.