[No. B170037. Second Dist., Div. Five. July 22, 2004.]

ETSUKO KANEKO, Plaintiff and Appellant, v.
YUMI YAGER et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.C. and the dissenting opinion is certified for publication only as to the first paragraph.

COUNSEL

Hitchcock, Bowman & Schachter, Robert Schachter for Plaintiff and Appellant.

John H. Sibbison III for Defendants and Respondents.

OPINION

TURNER, P. J.—

## I. INTRODUCTION

Etsuko Kaneko (plaintiff) appeals from a summary judgment (Code Civ. Proc., § 437c) in favor of Yumi Yager and Hiroko Asano (defendants). Probate Code[1] section 4303, subdivision (a) provides, under specified circumstances, an immunity to third persons who in good faith rely on a power of attorney. In the published portion of this opinion, we will discuss the effect of the section 4303, subdivision (a) immunity on two powers of attorney, one special and the other general. ██ We conclude that a special power of attorney executed by plaintiff on February 22, 2001, is not entitled to the immunity in section 4303, subdivision (a). Later, on April 14, 2001, plaintiff issued a general power of attorney. As to the April 14, 2001, general power of attorney, we hold the section 4303, subdivision (a) immunity applies. In the unpublished portion of the opinion, we will conclude that as to those matters which do not receive the benefit of the section 4303, subdivision (a) immunity, defendants are entitled to judgment on traditional agency principles. We therefore affirm the judgment.

## II. BACKGROUND

### A. Plaintiff's Complaint

On August 16, 2002, plaintiff filed her complaint for money had and received. Plaintiff alleged she executed a special power of attorney on February 22, 2001, in favor of her former husband, Kenichi Kaneko. The sole purpose of the February 22, 2001, special power of attorney was to allow Mr. Kaneko to sell a parcel of property located in Palos Verdes Estates, California. According to plaintiff, the February 22, 2001, special power of attorney did not comply with Probate Code section 4121 in that the document was not acknowledged before a notary public or signed by at least two witnesses.

---

[1] Unless otherwise noted, all future statutory references are to the Probate Code.

Defendants then loaned $50,000 to Mr. Kaneko. On March 28, 2001, acting pursuant to an invalid power of attorney, Mr. Kaneko executed a trust deed on the Palos Verdes Estates property. Due to financial difficulties and in order to close the escrow, it became necessary for plaintiff to release $50,000 from the sale of the Palos Verdes Estates property to defendants. According to plaintiff's complaint, she never authorized funds to be paid to Mr. Kaneko. Plaintiff sought damages in the sum of $50,000, the moneys paid to defendants from the escrow, plus $3,276.39 in interest. Plaintiff did not sue her former spouse, Mr. Kaneko.

### B. The Summary Judgment Evidence

Plaintiff was the sole owner of a residence in Palos Verdes Estates. On February 22, 2001, plaintiff executed a special power of attorney in favor of Mr. Kaneko, her ex-husband. The February 22, 2001, special power of attorney stated in part, "[Plaintiff] hereby . . . appoints [Mr.] Kaneko [her] true and lawful attorney for [her] and in [her] name, place and stead and for [her] use and benefit[.]" Plaintiff granted Mr. Kaneko powers with respect to her real property, to wit, "[T]o exercise any or all of the following powers as to real property, any interest therein and/or any building thereon: To contract for, purchase[,] receive and take possession thereof and of evidence of title thereto; to lease the same for any term or purpose, including leases for businesses, residence and oil and/or mineral development; to sell, exchange, grant or convey the same with or without warranty; *and to mortgage,* transfer in trust, *or otherwise encumber or* hypothecate the same to secure payment of negotiable or non-negotiable note or performance of any obligation or agreement." (Italics added.) Plaintiff's signature on the special power of attorney was not notarized. Further, no witnesses executed the February 22, 2001, special power of attorney.

In her summary judgment opposition, plaintiff declared: "I gave the Special Power of Attorney to Mr. Kaneko so that he could help sell my residence . . . . I did not instruct him to borrow any money and I gave him no authority to borrow any money. [¶] It was my understanding that he would use the Special Power of Attorney only for purposes of assisting me in finding a buyer and selling the residence." (Underscoring in original.) Mr. Kaneko agrees that plaintiff asked him to assist her in the sale of the residence since he was in Los Angeles and she was frequently in Japan and the special power of attorney was given to him for that purpose.

On March 28, 2001, Mr. Kaneko borrowed money from Ms. Asano, to invest in a restaurant. Mr. Kaneko signed a $50,000 promissory note and trust deed in plaintiff's name. Mr. Kaneko also signed his own name as plaintiff's "attorney in fact." According to Mr. Kaneko, Ms. Asano knew he was

borrowing the money to invest in a restaurant. At that time, Mr. Kaneko received $20,000 from Ms. Asano. He deposited the funds in a bank account "for restaurant purposes." Mr. Kaneko showed the February 22, 2001, special power of attorney to Ms. Asano. As part of the summary judgment opposition, Mr. Kaneko declared: "On March 28, 2001, Ms. Asano suggested that I sign [plaintiff's] name to the note and deed of trust. Ms. Asano told me that she would only loan $20,000.00 of her own funds, but I could obtain an additional $30,000.00 from her friend Yumi Yager. However, to do so I needed to execute the promissory note and deed of trust. Ms. Asano also told me that I needed to obtain a power of attorney in order to get the additional $30,000.00 from Ms. Yager. During this period of time, I again told Ms. Asano that the additional $30,000.00 would be used for the restaurant."

On April 14, 2001, after Mr. Kaneko executed the note and trust deed, and Ms. Asano loaned him $20,000 of the $50,000 he would eventually borrow, plaintiff executed a general power of attorney. The April 14, 2001, general power of attorney stated in part, "[Plaintiff] hereby . . . appoints [Mr. Kaneko] [her] true and lawful attorney for [her] and in [her] name, place and stead and for [her] use and benefit." Plaintiff granted Mr. Kaneko the power, among other things, "To sign all documents and enter into all procedures necessary and proper to mortgage my real property . . . and to use the funds in ways deemed proper by him"; and "full power and authority to do and perform all and every act and thing whatsoever requisite, necessary or appropriate to be done in and about the premises as fully to all intents and purposes as I might or could do if personally present[.]" The April 14, 2001, general power of attorney concluded: "My said Attorney is empowered hereby to determine in his sole discretion the time when, purpose for and manner in which any power herein conferred upon him shall be exercised, and the conditions, provisions and covenants of any instrument or document which may be executed by him pursuant hereto[.]" The April 14, 2001, general power of attorney was notarized. Mr. Kaneko provided the general power of attorney to defendants. Mr. Kaneko maintains, however, that defendants knew at all times, "[T]he money [he] borrowed was being used for the restaurant." Defendants did not record the trust deed for several months. Mr. Kaneko states they did so only when they learned that the restaurant was unsuccessful and the residence might be lost to foreclosure.

In the summary judgment opposition, plaintiff stated: "I requested that Mr. Kaneko help me in selling my automobile. He presented to me a 'General Power of Attorney.' . . . [¶] . . . [¶] With this second General Power of Attorney I did not ever instruct or authorize Mr. Kaneko to borrow money on my behalf or for himself. Also, I never instructed nor requested that Mr. Kaneko make repairs to the residence." Mr. Kaneko admits he misled plaintiff. He never told plaintiff he was borrowing $50,000 to invest in a restaurant. Moreover, Mr. Kaneko led plaintiff to believe the special power of

attorney was only to help her sell her residence. Also, Mr. Kaneko led plaintiff to believe the general power of attorney was only to sell her automobile.

Ms. Asano declared she is a licensed real estate broker who was introduced to Mr. Kaneko by a mutual acquaintance. The introduction was made because Mr. Kaneko wanted to sell some real property. Ms. Asano inspected the property and told Mr. Kaneko the residence needed significant repair and refurbishing in order to maximize its sales value. She estimated the cost of repairs at $50,000. Ms. Asano later agreed to loan Mr. Kaneko money to repair the property. Ms. Asano had only $25,000 to lend Mr. Kaneko. Therefore, Ms. Asano arranged for Ms. Yager to lend Mr. Kaneko an additional $25,000 for purposes of refurbishing the residence. The agreement between Mr. Kaneko and Ms. Asano was that she would be retained as the listing agent and repaid with interest from the proceeds of the sale of the property. Ms. Asano and Ms. Yager agreed to share the listing commission upon sale. Ms. Asano knew that because the February 22, 2001, special power of attorney was not notarized it could not be recorded. Mr. Kaneko assured Ms. Asano he would obtain a notarized power of attorney from plaintiff. On March 29, 2001, Ms. Asano gave Mr. Kaneko a $20,000 check. After he obtained the notarized general power of attorney from plaintiff, on or about April 16, 2001, Ms. Asano gave Mr. Kaneko a check for an additional $5,000. Ms. Yager delivered a $25,000 check to Mr. Kaneko on or about April 17, 2001. Ms. Yager states, ". . . I loaned $25,000.00 to [p]laintiff by delivering a check in said amount . . . to [Mr. Kaneko], her attorney-in-fact, pursuant to a Power of Attorney appointing him in said capacity."

Ms. Asano states that when another party commenced foreclosure proceedings against the real property, ". . . I was required to loan an additional $21,789.00 payable to Western Financial to stop the foreclosure . . . ." When the residence was sold, defendants received $75,065.59. Plaintiff declares she allowed defendants to be paid the full amount they claimed even though she did not believe any money was owed to them, because she did not want the property to be lost to foreclosure.

## III. DISCUSSION

### A. Standard of Review

■ We apply the following summary judgment standard of review as articulated by the Supreme Court. In *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851 [107 Cal.Rptr.2d 841, 24 P.3d 493], the Supreme Court described a party's burdens on a summary judgment or adjudication motion as follows: "[F]rom commencement to conclusion, the party moving

for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. That is because of the general principle that a party who seeks a court's action in his favor bears the burden of persuasion thereon. [Citation.] There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. . . . [¶] . . . [T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . . A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.]" (Fns. omitted; see *Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878 [116 Cal.Rptr.2d 158].) We review the trial court's decision to enter summary judgment de novo. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65, 67–68 [99 Cal.Rptr.2d 316, 5 P.3d 874]; *Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1188 [91 Cal.Rptr.2d 35, 989 P.2d 121], disapproved on another point in *Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 854, fn. 19.) The trial court's stated reasons for granting summary judgment are not binding on us because we review its ruling, not its rationale. (*Continental Ins. Co. v. Columbus Line, Inc.* (2003) 107 Cal.App.4th 1190, 1196 [133 Cal.Rptr.2d 199]; *Dictor v. David & Simon, Inc.* (2003) 106 Cal.App.4th 238, 245 [130 Cal.Rptr.2d 588].)

### B. The Power of Attorney Immunity

The 1994 Power of Attorney Law, section 4000[2] et seq., was adopted as part of a recodification and reorganization of statutes pertaining to powers of attorney. (Stats. 1994. ch. 307, § 16, at p. 1983.) The Law Revision Commission recommendation states: "The proposed comprehensive Power of Attorney Law restructures the power of attorney statutes and relocates them as a new Division 4.5 in the Probate Code, starting with Section 4000." (Recommendation: Comprehensive Power of Attorney Law (Feb. 1994) 24 Cal. Law Revision Com. Rep. (1994) p. 120 (hereafter Recommendation).) Later in its 1994 Recommendation, the commission described the proposed changes to the power of attorney statutes thusly: "The great majority of changes that would be made by the proposed law concern the law relating to powers of attorney for property . . . because these statutes are incomplete and disorganized. Much of the proposed legislation is directed toward supplying more detailed rules and filling gaps in existing coverage, rather than making any major substantive revisions." (Recommendation, *supra,* pp. 121–122, fn.

---

[2] Section 4000 states, "This division may be cited as the Power of Attorney Law."

omitted.) Later, in its recommendation, the commission explained: "The proposed law generalizes certain rules to apply to all powers of attorney covered by the statute, whether for property matters, personal care, or health care. Rules concerning execution, termination, revocation of authority, and the like would apply to all powers covered by the statute, thereby achieving a greater consistency in the law. The statutes relating to durable powers of attorney for health care and powers under the Uniform Statutory Form Power of Attorney Act would remain largely self-contained, with only minor technical changes to conform to the restructured statute." (*Id.*, at p. 122.)

One of the purposes of the 1994 law was to explicitly define how to create a power of attorney. The Law Revision Commission recommendation explained the state of the law in 1994 and how the new proposed legislation would alter matters: "The proposed law provides general rules governing creation of a power of attorney. As under existing law, a power of attorney must be in writing and signed by the principal or at the principal's direction. There is no requirement that the attorney-in-fact sign the instrument. The proposed law generalizes the requirement that a power of attorney be dated, which applies under existing law only to the durable power of attorney for health care and the statutory form power . . . . [¶] *In addition, the proposed law requires as a general rule that powers of attorney be either acknowledged before a notary public or signed by two witnesses. This requirement is drawn from the execution requirements applicable to non-form durable powers of attorney for health care.* . . . The principal is given the alternative of witnessing in the interest of flexibility, and in recognition of the fact that a notary is not needed if a power of attorney does not pertain to real property and in some situations may not be available." (Recommendation, *supra*, 24 Cal. Law Rev. Com. Rep. at pp. 124–125, italics added.)

In this vein, the commission recommended the enactment of and the Legislature ultimately adopted section 4121, which states: "A power of attorney is legally sufficient if all of the following requirements are satisfied: [¶] (a) The power of attorney contains the date of its execution. [¶] (b) The power of attorney is signed either (1) by the principal or (2) in the principal's name by another adult in the principal's presence and at the principal's direction. [¶] (c) The power of attorney is either (1) acknowledged before a notary public or (2) signed by at least two witnesses who satisfy the requirements of Section 4122." The Law Revision Commission comment to section 4121 states in part: "Section 4121 provides the general execution formalities for a power of attorney under this division. A power of attorney that complies with this section is legally sufficient as a grant of authority to an attorney-in-fact . . . . [¶] In subdivision (b), the requirement that a power of attorney be signed by the principal or at the principal's direction continues a rule implicit in former law. See former Civ. Code §§ 2400, 2410(c). In

addition, it generalizes the rule applicable to durable powers of attorney for health care under former Civil Code Section 2432. [¶] *The requirement that the power of attorney be either acknowledged or signed by two witnesses, in subdivision (c), generalizes part of the rule applicable to durable powers of attorney for health care under former Civil Code Section 2432(a)(3). Former general rules did not require either acknowledgment or witnessing.* However, the statutory form power of attorney provided for acknowledgment. See former Civ. Code § 2475 (now Prob. Code § 4401). This rule still applies to the statutory form power of attorney; witnessing does not satisfy Section 4402. Subdivision (c) provides the general rule as to witnessing; specific qualifications for witnesses are provided in Section 4122." (24 Cal. Law Revision Com. Rep. (1994) pp. 165–166 (hereafter Comment), reprinted at 53 West's Ann. Prob. Code (2004 supp.) foll. § 4121, p. 62, italics added.)

In this case, the February 22, 2001, special power of attorney did not comply with the statutory requirements in section 4121, subdivision (c). The February 22, 2001, special power of attorney was neither witnessed nor notarized. Hence, plaintiff argues the February 22, 2001, special power of attorney was invalid. On its face, plaintiff is correct—the February 22, 2001, special power of attorney was invalid.

But defendants argue that they were entitled to rely on the February 22, 2001, special power of attorney because of the provisions of section 4300 et seq. which provides an immunity for third parties who rely on a power of attorney. The Law Revision Commission recommendation identifies the problems the 1994 statutes were intended to address: "Existing law provides a number of rules concerning the relation between attorneys-in-fact and third persons, both in the general agency statutes and in the power of attorney statutes. . . . [¶] The proposed law continues these principles of existing law, but adds several additional rules intended to make powers of attorney more effective. The proposed law sets forth a general duty on the part of third persons to accord the same rights and privileges with respect to the interests of the principal as if the principal were personally present and acting. In order to facilitate compliance with this duty, the proposed law protects a third person acting in good faith and protects the third person in relying on the representations of the attorney-in-fact." (Recommendation, *supra*, pp. 138–139.) Section 4300 states in part, "A third person shall accord an attorney-in-fact acting pursuant to the provisions of a power of attorney the same rights and privileges that would be accorded the principal if the principal were personally present and seeking to act." The Law Revision Comment to section 4300 states: "Section 4300 is new. This section provides the basic rule concerning the position of an attorney-in-fact: that the attorney-in-fact acts in place of the principal, within the scope of the power of attorney, and is to be treated as if the principal were acting." (Comment,

*supra*, p. 195, reprinted at 53 West's Ann. Probate Code, *supra,* foll. § 4300, p. 89.) Section 4301 identifies how a third person may rely on the general authority of an attorney in fact: "A third person may rely on, contract with, and deal with an attorney-in-fact with respect to the subjects and purposes encompassed or expressed in the power of attorney without regard to whether the power of attorney expressly authorizes the specific act, transaction, or decision by the attorney-in-fact."

Defendants assert they are protected from liability by the provisions of section 4303 which states: "(a) A third person who acts in good faith reliance on a power of attorney is not liable to the principal or to any other person for so acting if all of the following requirements are satisfied: [¶] (1) The power of attorney is presented to the third person by the attorney-in-fact designated in the power of attorney. [¶] (2) The power of attorney appears on its face to be valid. [¶] (3) The power of attorney includes a notary public's certificate of acknowledgment or is signed by two witnesses. [¶] (b) Nothing in this section is intended to create an implication that a third person is liable for acting in reliance on a power of attorney under circumstances where the requirements of subdivision (a) are not satisfied. Nothing in this section affects any immunity that may otherwise exist apart from this section." The Law Revision Commission comment to section 4303 states: "Section 4303 continues former Civil Code Section 2512 without substantive change, with the addition of the witnessing rule in subdivision (a)(3). This section is intended to ensure that a power of attorney, whether durable or nondurable, will be accepted and relied on by third persons. The person presenting the power of attorney must actually be the attorney-in-fact designated in the power of attorney. If the person purporting to be the attorney-in-fact is an impostor, the immunity does not apply. The third person can rely in good faith on the notary public's certificate of acknowledgment or the signatures of the witnesses that the person who executed the power of attorney is the principal. [¶] Subdivision (b) makes clear that this section provides an immunity from liability where the requirements of the section are satisfied. This section has no relevance in determining whether or not a third person who acts in reliance on a power of attorney is liable under the circumstances where, for example, the power of attorney does not include a notary public's certificate of acknowledgment." (Comment, *supra*, p. 197, reprinted at 53 West's Ann. Prob. Code, *supra,* foll. § 4303, p. 90.)

As can be noted, the immunity only applies when the power of attorney is presented to the third person who is acting in good faith by the attorney in fact listed in the power of attorney; on its face, the power of attorney appears to be valid; and the document includes either a notary public's certificate of acknowledgment or the signatures of two witnesses. The section 4303, subdivision (a) immunity is inapplicable in this case

because the February 22, 2001, special power of attorney does not contain a notary public's certificate of acknowledgement or the signatures of two witnesses.

Further, the fact defendants were acting in good faith does not by itself provide a complete defense to plaintiff's complaint. No doubt, section 4303, subdivision (a) refers to a person relying in "good faith reliance on a power of attorney." The mere existence of good faith is insufficient. The section 4303 immunity available to third persons like defendants requires in addition to good faith: reliance on a power of attorney (which is statutorily defined in section 4121); the person presenting the document must be the one identified in the power of attorney; the power of attorney must "appear valid" on its face; and the power of attorney must contain either the notary public's acknowledgement certificate or the signatures of two witnesses. Simply stated, the section 4303, subdivision (a) immunity is inapplicable to the February 22, 2001, special power of attorney.

Defendants argue though that section 4303, subdivision (b) protects them from liability. Defendants rely on the following language in the Law Revision Commission comment to section 4303 which, as previously noted, states, "This section has no relevance in determining whether or not a third person who acts in reliance on a power of attorney is liable under the circumstances where, for example, the power of attorney does not include a notary public's certificate of acknowledgment." (Comment, *supra*, p. 197, reprinted at 53 West's Ann. Probate Code, *supra*, foll. § 4303, p. 90.) This language does not permit us to uphold the summary judgment based on the section 4303, subdivision (a) immunity. In order for the February 22, 2001, special power of attorney to be valid, it must comply with section 4121. Section 4121 explicitly states that in order for a power of attorney to be "legally sufficient," it must comply with all of the enumerated requirements: set forth the execution date; be signed by the principal or by another person under specified circumstances; and be acknowledged before a notary public or contain the signature of two witnesses. Nothing in section 4303 alters the express statutory requirements in section 4121 for a power of attorney to be "legally sufficient."

Further, section 4303, subdivision (b) does not create an immunity for defendants. Section 4303, subdivision (b) merely provides that the failure to comply with the requirements of section 4303, subdivision (a) formalities, such as the absence of a notary public's acknowledgement certificate or the signatures of two witnesses, does not create even by implication liability for a third person who relies on an otherwise sufficient power of attorney. (Comment, *supra*, p. 197, reprinted at 53 West's Ann. Prob. Code, *supra*, foll. § 4303, p. 90 ["This section has no relevance in determining whether or not a

third person who acts in reliance on a power of attorney is liable under the circumstances where, for example, the power of attorney does not include a notary public's certificate of acknowledgment"].) Section 4303, subdivision (b) clarifies that nothing in that statute "affects any immunity" that may otherwise be available to third persons such as defendants. As applied to this case, section 4303, subdivision (b) does not provide an immunity to defendants. To sum up, the section 4303 immunity is unavailable to defendants because the February 22, 2001, special power of attorney is not "legally sufficient" within the meaning of section 4121 nor does it comply with the section 4303, subdivision (a)(3) express notary public's acknowledgement certificate or two witness signature requirement.

There are two remaining questions in terms of the section 4303, subdivision (a) immunity. First, there is the issue of the effect of the properly notarized general power of attorney, which plaintiff executed on April 14, 2001. Plaintiff executed the invalid special power of attorney on February 22, 2001. On March 28, 2001, Mr. Kaneko executed a note for $50,000 and the trust deed. Also on March 28, 2001, Ms. Asano gave Mr. Kaneko the initial $20,000 payment. Later on April 14, 2001, plaintiff executed the general power of attorney. On April 16, 2001, Ms. Asano gave Mr. Kaneko an additional $5,000. The next day, Ms. Yager gave Mr. Kaneko her portion of the $25,000 loan. The April 14, 2001, general power of attorney was "legally sufficient" within the meaning of section 4121 and it complied with all of the section 4303, subdivision (a) requirements. Hence, pursuant to section 4303, subdivision (a), defendants, as third parties, are immune from any liability to plaintiff for all moneys paid to Mr. Kaneko after the presentation of the April 14, 2001, general power of attorney.

The second remaining question is whether the April 14, 2001, general power of attorney cures the problem arising from the statutorily noncompliant February 22, 2001, special power of attorney. The April 14, 2001, general power of attorney does not ratify any former actions by Mr. Kaneko. Therefore, the section 4303, subdivision (a) immunity applies only to the events occurring after the execution and notarization of the April 14, 2001, general power of attorney. Hence, summary judgment could not be entered because of the section 4303, subdivision (a) immunity as it is inapplicable to Ms. Asano's March 28, 2001, $20,000 payment to Mr. Kaneko.

C. Agency*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 970.

## IV. DISPOSITION

The judgment is affirmed. Defendants, Yumi Yager and Hiroko Asano, are to recover their costs on appeal from plaintiff, Etsuko Kaneko.

Armstrong, J., concurred.

**MOSK, J.,** Dissenting.—I agree with the published portion of the majority opinion, but would reverse because of the reasons given in the unpublished portion of the majority opinion. I do not believe the agency relationship is established as a matter of law, and therefore the summary judgment should be reversed.

\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

\*See footnote, *ante,* page 970.