Filed 8/14/14  Kamrany v. Shahryar CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| NAKE M. KAMRANY, | B247904 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC107538) |
| v. | |
| HAFIZAH SHAHRYAR, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, H. Chester Horn, Jr., Judge.  Reversed.

Nake M. Kamrany, in pro. per. for Plaintiff and Appellant.

Cypress and Caroline H. Mankey for Defendant and Respondent.

# I. INTRODUCTION

Plaintiff, Nake M. Kamrany, appeals from the judgment and order granting summary judgment. Plaintiff's first amended complaint alleges he was entitled to 49 percent of the profits from being in a partnership. Plaintiff's partner was the late Ishaq Shahryar. Defendant, Hafizah Shahryar, is Mr. Shahryar's surviving spouse. She moved for summary judgment against plaintiff based on her affirmative defense of laches. The trial court granted summary judgment finding plaintiff had unreasonably delayed in enforcing his rights and thereby prejudiced defendant. We find defendant has failed to meet her burden of persuasion that laches applied to bar all of plaintiff's claims. We reverse the summary judgment.

# II. BACKGROUND

## A. The August 24, 2010 First Amended Complaint

We previously discussed plaintiff's allegations in his amended complaint in detail in *Kamrany v. Shahryar* (Feb. 7, 2012, B233270) [nonpub. opn.]. In summary, plaintiff and Mr. Shahryar allegedly entered into an oral partnership agreement on June 15, 1971. The partnership was for the purpose of forming a solar energy business. The terms of the partnership agreement were: Mr. Shahryar would manage and run the business; plaintiff would provide $25,000; if the original business was bought out, the proceeds would be reinvested in another solar energy venture; and ownership of the business was 51 percent for Mr. Shahryar and 49 percent for plaintiff. On April 12, 2009, Mr. Shahryar died. On February 24, 2010, plaintiff filed a verified creditor's claim with the probate court. Defendant denied plaintiff's claim on March 19, 2010. On April 9, 2010, plaintiff filed his initial complaint against defendant. Plaintiff prayed for relief as follows: a judicial declaration that he is entitled to 49 percent of the partnership assets; a partnership accounting; judicial supervision of winding up of the partnership; injunctive relief;

damages against defendant for denying the existence of the partnership; costs of suit; and other appropriate relief.

## B. Defendant's Summary Judgment Motion, Plaintiff's Opposition
And Defendant's Reply

On November 1, 2012, defendant filed her summary judgment motion. Defendant contended plaintiff's claims were barred by the affirmative defense of laches. Defendant asserted plaintiff had unreasonably delayed in asserting his rights. Defendant contended plaintiff waited until after the death of Mr. Shahryar and other key witnesses which would profoundly prejudice her defense.

On January 7, 2013, plaintiff filed his opposition. Plaintiff argued there was no prejudice to defendant because he timely filed his claim. Plaintiff contended he had sufficient evidence to demonstrate the partnership existed. Plaintiff asserted he had no cause to assert his rights until after Mr. Shahryar had passed away. Plaintiff contended Mr. Shahryar had not breached their partnership agreement, and even if he had, plaintiff had no notice of it.

On January 31, 2013, defendant filed her reply. Defendant contended plaintiff failed to raise any objections to her undisputed material facts. Defendant also argued plaintiff's material facts did not establish a material dispute.

## C. Undisputed Facts

Mr. Shahryar graduated from the University of California at Santa Barbara in 1961 with a bachelor of science degree in physical chemistry. Mr. Shahryar married defendant in November 1984. Plaintiff was not invited and did not attend the wedding. As noted, Mr. Shahryar died on April 12, 2009. Plaintiff did not attend Mr. Shahryar's funeral.

Plaintiff filed the complaint in this action on April 9, 2010. Plaintiff filed the first amended complaint on August 24, 2010. The first amended complaint alleges plaintiff

3

and Mr. Shahryar entered into a partnership agreement on June 15, 1971 (the partnership agreement). Plaintiff possessed an unsigned copy of the partnership agreement. Plaintiff does not have a signed copy of the partnership agreement with Mr. Shahryar. Plaintiff contended a signed copy was destroyed in a fire in 2006. After the fire, plaintiff never asked Mr. Shahryar for a signed copy of the partnership agreement. Plaintiff's declaration explains why defendant was never advised of the partnership agreement: "[Mr.] Shahryar requested that [p]laintiff not contact [defendant] or inform her of [p]laintiff's interest in the business because [Mr.] Shahryar did not want his wife to know of [p]laintiff's ownership interest in the business. Plaintiff complied with this request, and never informed [defendant] of his interest in the business until after [Mr.] Shahryar's death."

The partnership agreement indicated plaintiff wrote the first draft of a prospectus for "SOLAC" and gave it to Mr. Shahryar. The partnership agreement was typed in two versions. The second version was intended to be more readable because it was typed on a newer typewriter. Ms. Gretchen Pfeffer, plaintiff's assistant at the time, typed both versions.

The partnership agreement indicated that plaintiff invested $25,000 in exchange for 49 percent of a solar energy business managed by Mr. Shahryar. The name of the business was "SOLAC INTERNATIONAL." The venture's purpose was to make low cost solar panels for producing electricity for residential and commercial use. The partnership agreement contained a clause requiring Mr. Shahryar to work exclusively for Solac. According to defendant, Mr. Shahryar never owned or operated a business named "SOLAC INTERNATIONAL." The partnership agreement referred to the title of the venture as Solac International. After the first reference to Solac International, the remaining references in the partnership agreement are to Solac. As will be noted, defendant argued at one point this difference in language is relevant to the outcome of this case. We refer to the partnership in the varying ways it was identified by the parties and the trial court.

4

In 1975, Mr. Shahryar worked at Spectrolabs and helped invent terrestrial solar cells. The articles of incorporation for "SOLEC International, Inc." were filed with the Secretary of State on March 2, 1976. Plaintiff stated Mr. Shahryar founded Solec pursuant to the partnership agreement. Plaintiff was never an officer, director or employee of Solec. Solec never issued any stock for any partnership between plaintiff and Mr. Shahryar.

The partnership agreement required Mr. Shahryar to update plaintiff intermittently on the company's progress. Plaintiff had no documents reflecting communications with Mr. Shahryar regarding Solec. Defendant found no documents reflecting any communication between Mr. Shahryar and plaintiff regarding Solec. Plaintiff claimed to typically receive updates from Mr. Shahryar by telephone. Sometimes, plaintiff would run into Mr. Shahryar and they would go into a coffee shop, sit down and talk. Plaintiff did not recall the last time they had lunch or coffee. Plaintiff's last telephone conversation with Mr. Shahryar was in 2003.

Plaintiff never owned any stock in Solec. Plaintiff never received shareholder updates, tax returns, stock certificates or the articles of incorporation for Solec. When originally formed, Solec's sole shareholders were Mr. Shahryar and John Shaheen. In 1981, Mr. Shahryar and Mr. Shaheen sold 80 percent of Solec International to the Pilkington Company in England. Plaintiff did not know when Mr. Shahryar sold any shares to Pilkington Company.

In 1985, Mr. Shahryar bought back all the Solec International shares from Pilkington Company. In 1988, John Paul DeJoria entered into a purchase agreement with Mr. Shahryar. Mr. DeJoria agreed to buy approximately 25 percent of Solec International. Mr. DeJoria later purchased another 25 percent of Solec International to become an equal owner. Before making his investment, Mr. DeJoria asked Mr. Shahryar whether there were any other business partners involved in the company. Mr. Shahryar told Mr. DeJoria there were no other partners. Plaintiff knew since 1995 that Mr. DeJoria had been an investor in Solec and shared in the proceeds from its sale.

5

In 1994, Mr. Shahryar and Mr. DeJoria sold approximately 90 percent of their Solec International stock to the Japanese companies: Sanyo Electric Co., Ltd.; Sumitomo Corporation; and Sumitomo Corporation America. When Mr. Shahryar and Mr. DeJoria sold the majority of their Solec International shares in 1994, the company became J & I Enterprises, Inc. Mr. Shahryar and Mr. DeJoria were the only shareholders of J & I Enterprises Inc. On August 15, 1997, Mr. Shahryar and Mr. DeJoria sold the remainder of their Solec International shares to Sanyo Electric Co., Ltd. and the Sumitomo entities. Plaintiff's name does not appear as an interested party. Plaintiff did not make his interest in Solec known to any of the purchasers.

Pursuant to the partnership agreement, "Should SOLAC [*sic*] be bought out in the future and is purchased by a domestic or foreign investment interest, the parties agree that the proceeds of the sale will not be distributed to the principals. Instead, the proceeds of the sale will be re-invested in another solar energy business, maintaining the same relative share of interest by each party." Some of the proceeds from Solec's sale were not reinvested in another solar energy company. Plaintiff made no legal claims to any of the proceeds from Solec's sale in 1994 until after Mr. Shahryar's death. Plaintiff never requested any documents concerning where the proceeds from the Solec sale were held.

Mr. Shahryar and defendant spent proceeds from Solec's sale on: living expenses; homes for people; hospital treatments for strangers; house remodeling; cars; clothes; and parties. Plaintiff knew Mr. Shahryar had made personal use of some of the proceeds from the Solec sale and never objected.

After Mr. Shahryar sold his Solec International shares in 1997, he was contractually prohibited from manufacturing silicon solar cells for five years, and he abided by that prohibition. In 1996, Mr. Shahryar started a systems engineering company called Solar Utility Company, where he worked until it closed in 2000. In 2000, Mr. Shahryar registered Global Energy Systems, Inc. with the Secretary of State. Global Energy Systems, Inc. was never a viable business.

Mr. Shahryar was the Afghan ambassador to the United States from 2002 to 2003. After resigning his ambassadorship, Mr. Shahryar served as a paid consultant to a

company called Nour USA from 2004 to 2009.  Nour USA worked with the military to build barracks, cafeterias and bases.

Mr. Shahryar formed Sun King Solar, Inc. in February 2008.  Sun King Solar, Inc. was a systems installation company.  Defendant was shareholder, director, and corporate secretary of Sun King Solar, Inc.  Mr. Shahryar reinvested a few thousand dollars from the proceeds of the Solec sale in Sun King Solar, Inc.  Sun King Solar, Inc. closed in 2010.   Many of the individuals with knowledge and facts concerning plaintiff's claims are deceased.  This includes:  Mr. Shahryar; Mr. Shaheen, the former Solec partner; Jim Hayes, former board chairman of Solec International, Inc.; Frank Figil, vice president of manufacturing at Solec; Jim McLure, sales manager at Solec; and Dennis Oliver, who worked at Pilkington Company.

Defendant worked full time at Solec International, Inc. from 1983 to 1986 and intermittently from 1986 until 1994.  At no time was defendant informed plaintiff had any sort of interest in the company.  Mr. Shahryar discussed his past and present work with defendant during their marriage.  Mr. Shahryar never told defendant about a partnership with plaintiff.  Mr. Shahryar routinely maintained copies of important business records, including contracts.  Defendant reviewed all of her and her husband's business records.  Defendant found no document in Mr. Shahryar's records indicating any partnership with plaintiff.


D.  Plaintiff's Additional Facts


Plaintiff and Mr. Shahryar shared an apartment in the 1960s.  This occurred while plaintiff was going through a divorce.  Plaintiff received financial statements for the partnership intermittently from Mr. Shahryar.  Ms. Pfeffer took verbatim notes of the partnership agreement between plaintiff and Mr. Shahryar.  Ms. Pfeffer was present when plaintiff and Mr. Shahryar discussed starting a solar energy business.  Ms. Pfeffer typed the agreement to track her notes as closely as possible.  Ms. Pfeffer saw plaintiff give to

Mr. Shahryar $25,000 in cash as part of the partnership agreement she transcribed. She witnessed plaintiff and Mr. Shahryar sign the typed agreement.

### E. Trial Court's Order And Judgment

On February 6, 2013, the trial court issued its order granting defendant's summary judgment motion on the basis of laches. The trial court found: plaintiff had unreasonably delayed filing suit and agreed with defendant's assertions; plaintiff had done nothing to enforce or secure any rights during the 40 years after the partnership was allegedly formed and 14 years after the Solec International sale; Mr. Shahryar's conduct was inconsistent with the partnership agreement; plaintiff had reason to bring his claims earlier than 2010; defendant had established prejudice because Mr. Shahryar and other key witnesses are deceased; plaintiff's signed copy of the agreement was lost in a fire; and plaintiff failed to raise a triable issue of material fact. On February 26, 2013, judgment was entered. Plaintiff subsequently appealed.

## III. DISCUSSION

### A. Overview

In *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, at pages 850–851, our Supreme Court described a party's burden on a summary judgment motion as follows: "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. That is because of the general principle that a party who seeks a court's action in his favor bears the burden of persuasion thereon. [Citation.] There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof . . . . [¶] [T]he party

8

moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact . . . .  A prima facie showing is one that is sufficient to support the position of the party in question.  [Citation.]"  (Fns. omitted; see *Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 877-878.)  As we will explain, defendant failed to meet her initial burden of producing evidence plaintiff unreasonably delayed filing suit as to all of his claims.

We review an order granting summary judgment de novo.  (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336; *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65, 67-68.)  The trial court's stated reasons for granting summary judgment are not binding because we review its ruling not its rationale. (*Coral Construction, Inc. v. City and County of San Francisco, supra,* 50 Cal.4th at p. 336; *Continental Ins. Co. v. Columbus Line, Inc.* (2003) 107 Cal.App.4th 1190, 1196.)  In addition, a summary judgment motion is directed to the issues framed by the pleadings. (*Turner v. Anheuser–Busch, Inc.* (1994) 7 Cal.4th 1238, 1252; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673, overruled on a different point in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527, fn. 5.)  These are the only issues a motion for summary judgment must address.  (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1249-1250; *Goehring v. Chapman University* (2004) 121 Cal.App.4th 353, 364.)

Under Civil Code section 3527, "The law helps the vigilant, before those who sleep on their rights."  Our Supreme Court has held: "[T]he affirmative defense of laches requires unreasonable delay in bringing suit 'plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay.' [Citation.]  Prejudice is never presumed; rather it must be affirmatively demonstrated by the defendant in order to sustain his burdens of proof and the production of evidence on the issue.  [Citation.]  Generally speaking, the existence of laches is a question of fact to

9

be determined by the trial court in light of all of the applicable circumstances, and in the absence of manifest injustice or a lack of substantial support in the evidence its determination will be sustained. [Citations.]" (*Miller v. Eisenhower Medical Center* (1980) 27 Cal.3d 614, 624; see also *Johnson v. City of Loma Linda, supra,* 24 Cal.4th at p. 68.) For purposes of argument only, we assume laches applies to all of plaintiff's causes of action including his damage claim.

### B. Unreasonable Delay Was Not Established By The Undisputed Facts

The Court of Appeal has explained: "The first element of laches is delay, as measured by the period 'from when the plaintiff knew (or should have known) of the allegedly infringing conduct, until the initiation of the lawsuit in which the defendant seeks to counterpose the laches defense.' [Citation.]" (*Magic Kitchen LLC v. Good Things Internat. Ltd.* (2007) 153 Cal.App.4th 1144, 1157; see *Drake v. Pinkham* (2013) 217 Cal.App.4th 400, 406 [same].) Plaintiff does not dispute knowing Mr. Shahryar had used some of the proceeds from the Solec sale for personal use. Personal use of the Solec sale proceeds would have violated the partnership agreement. However, the undisputed facts do not indicate when plaintiff discovered or should have learned that Mr. Shahryar had spent the proceeds from the Solec sale on personal items. Plaintiff testified to knowing Mr. Shahryar was using "partnership revenue" to purchase cars, jewelry, and clothing. The undisputed facts do not demonstrate when this personal use occurred or when plaintiff knew of it.

None of defendant's other undisputed facts establish that plaintiff had reason to bring his suit earlier than 2010. The partnership agreement's exclusivity clause applied only to the company formed from the agreement. Mr. Shahryar worked for other companies prior to the formation and after the sale of Solec. There is no evidence Mr. Shahryar worked for other companies during Solec's existence. The partnership agreement required only that the proceeds from the sale of the company be reinvested in another solar energy business. The partnership agreement set no deadline for when this

10

would occur.  Plaintiff's lack of inquiry into where the proceeds went after Solec's initial sale does not show he failed to act when he should have.  The partnership agreement required only that Mr. Shahryar keep plaintiff informed intermittently of Solec's activities.  Plaintiff bringing his suit one year after the death of Mr. Shahryar would be timely.  (See Code Civ. Proc., §§ 339 [two years statute of limitations for action upon oral contract] and 343 [four years statute of limitation for all other relief]; Corp. Code, § 16801, subd. (2)(A) [partnership dissolution after a partner's dissociation by death after 90 days and partners do not agree to continue partnership].)

The record is insufficient to support an affirmative finding that plaintiff had unreasonably delayed in bringing his action as to *all* of his potential claims.  Defendant has not demonstrated plaintiff unreasonably delayed in asserting his rights under the partnership agreement as to all of his claims.  Defendant failed to meet her initial burden of production that laches barred all of plaintiff's claims here.  We do not address the parties' remaining arguments.

## IV.  DISPOSITION

The judgment is reversed.  Plaintiff, Nake M. Kamrany, is awarded his appeal costs from defendant, Hafizah Shahryar.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P. J.

We concur:

MOSK, J.                                    KRIEGLER, J.

11