[No. B002714. Second Dist., Div. Seven. Jan. 30, 1985.]

ALES-PERATIS FOODS INTERNATIONAL, INC.,
Plaintiff and Appellant, v.
AMERICAN CAN COMPANY, Defendant and Respondent.

COUNSEL

Philip Michael Brown and Egerman, Brown & Rosen for Plaintiff and Appellant.

Pettit & Martin, John P. Macmeeken, D. Wayne Jeffries and A. Robert Rosin for Defendant and Respondent.

OPINION

JOHNSON, J.—This appeal is from a summary judgment in favor of the respondent can manufacturer, American Can Company. Appellant, Ales-

Peratis Foods International, Inc., is a buyer, packager and seller of seafood. Ales-Peratis purchased cans manufactured by the respondent from Gencan, a can supplier, for use in its business. When delivered, the cans were discovered to be defective. The cans therefore were not usable and Ales-Peratis lost the opportunity to can a large quantity of abalone. In response to this, Ales-Peratis filed a complaint seeking recovery from American Can for the economic losses Ales-Peratis suffered due to its inability to use these defective cans. American Can filed a motion seeking summary judgment on the grounds California law does not permit recovery of economic loss alone under a strict liability or negligence theory, nor does it permit recovery in warranty where the plaintiff is not in privity with the direct purchaser of the product.

■■■ The principal issue on appeal is whether a commercial consumer can recover for a solely economic loss caused by a negligently manufactured product which the manufacturer knew was destined for this particular consumer and its particular use for the product. We conclude recovery is authorized as a logical extension of recent decisions of the California Supreme Court.

### FACTS AND PROCEEDINGS BELOW*

In 1976 Ales-Peratis was offered a contract to buy, pack, and sell a quantity of abalone in Mexico. In order to fill the contract, Ales-Peratis (AP) had to obtain cans suitable for the packing of abalone. Local Mexican sources of cans, however, were unable to supply AP's needs.

In September of 1976, AP contacted Gencan, a can supplier in Los Angeles. AP ordered 119,200 cans specifically warning "make sure the cans are 'C' enamel for abalone packing *because of the acid in the product.*" AP subsequently executed a purchase order and entered into an oral contract with Gencan to sell AP 119,200 cans with a "C" type enamel lining suitable for packing abalone. At the time the order was placed Gencan did not have the requested type of can in stock and so it contacted a can manufacturer, American Can. Gencan informed American Can of the type of can it needed. American Can responded, advising Gencan that it had in stock a supply of cans meeting the requirements, "C" enamel lined, suitable for packing abalone or mackerel. Gencan relayed this information to AP who then paid for and authorized the delivery of the cans.

---

*Since this appeal is based on the grant of a summary judgment where we are bound to construe the evidence and the inferences based on that evidence most favorably to the party resisting summary judgment, many of the "facts" recited in this opinion will be subject to dispute in later proceedings.

The cans were delivered to the cannery where it was discovered they did not have the "C" enamel needed to withstand acid corrosion from the seafood product. These containers were unsuitable for packing abalone. As a result, AP was left with 119,200 deficient cans, was unable to can the abalone, and lost the contract for the sale of the abalone.

On August 14, 1978, AP filed its original complaint seeking recovery of the cost of the cans and of the economic loss due to the lost contract. In the complaint AP alleged it had entered into oral and written contracts with American Can. The complaint was in three counts, charging American Can with breach of contract, breach of express warranties and breach of implied warranties. In July of 1980, AP filed its first amended complaint for damages, adding a fourth cause of action, "Damages to Third Party" against American Can. On December 22, 1982, AP filed its second amended complaint for damages, deleting American Can as a defendant in the first three causes of action. Only the fourth cause of action, "Damages to Third Party" remained pending against American Can. It is this complaint which is the subject of the present appeal.

On April 7, 1983, American Can filed its motion for summary judgment. The motion was opposed by AP and a hearing held on April 28, 1983. The court granted the motion for summary judgment in its minute order issued without comment on April 29, 1983. Notice of entry of judgment was filed on June 22, 1983, and notice of appeal was filed on August 19, 1983.

## DISCUSSION

American Can argues it is not liable for appellant's economic loss because appellant can not show (1) the physical injury or property damage required of a negligence suit, (2) the existence of the privity required of a suit for breach of warranty, or (3) that California allows recovery for economic loss alone under strict liability. AP argues California law does not require a showing of physical harm or property damage as a prerequisite to a recovery for economic loss in a negligence suit. AP does not argue the privity issue, nor does it pursue recovery from American Can based on strict liability.

*Seely* v. *White Motor Co.* (1965) 63 Cal.2d 9, 18 [45 Cal.Rptr. 17, 403 P.2d 145], is the leading California case in the area of product liability, and is cited by American Can as the main support for its argument. In *Seely* plaintiffs sought recovery under breach of warranty and strict liability but not in negligence. Justice Traynor's decision established the pattern which

was to be followed by courts in California as well as other jurisdictions.[1] The court held consumers are entitled to damages under strict liability for physical injuries or property damage caused by defective products. However, they are not entitled to recover for purely economic losses. The issue of whether purely economic losses could be recovered in a negligence suit was not before the Supreme Court in *Seely*. Nonetheless, Justice Traynor while explaining why consumers could not collect for economic losses on a strict liability theory also announced dictum on the negligence question. "A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will. *Even in actions for negligence*, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone." (*Ibid.*, at p. 18, italics added.)

In a case decided the same year as *Seely*, the New Jersey Supreme Court staked out the opposite position. In *Santor* v. *A and M Karagheusian, Inc.* (1965) 44 N.J. 52 [207 A.2d 305, 16 A.L.R.3d 670], the court held a commercially worthless product *could* be the subject of a lawsuit against a manufacturer even though there was no privity of contract between consumer and manufacturer. The rationale of this opinion was based on avoidance of circuity of litigation where the same result (manufacturer's liability) would be reached. The court in *Santor* justified its decision with the following: "It has been suggested that the public urgency for the rule permitting the manufacturer to be sued by an injured consumer regardless of privity of contract does not exist where the only damage sustained by him is the loss of the defective article. The argument is that liability for the latter damage should be restricted to the immediate seller, and that the age-old privity doctrine should continue to bar direct recourse to the manufacturer. And it is said the dealer always has his action over against the maker of the defective product. In *Randy Knitwear*, supra, Judge Fuld dealt with the same problem. He said:

" 'It is true that in many cases the manufacturer will ultimately be held accountable for the falsity of his representations, but only after an unduly

---

[1]See, e.g., *Fredonia Broadcasting Corporation, Inc.* v. *RCA Corporation* (5th Cir. 1973) 481 F.2d 781, rehg. den. November 2, 1973, later app. (5th Cir. 1978) 569 F.2d 251, rehg. den. 572 F.2d 320, cert. den. (1978) 439 U.S. 859 [58 L.Ed.2d 167, 99 S.Ct. 177] (Texas law; strict liability); *Bright* v. *Goodyear Tire & Rubber Company* (9th Cir. 1972) 463 F.2d 240 (California law; intentional or reckless tort); *Midland Forge, Inc.* v. *Letts Industries, Inc.* (N.D. Iowa) 395 F.Supp. 506 (Iowa law; strict liability); *State of Arizona* v. *Cook Paint and Varnish Co.*, (D.Ariz. 1975) 391 F.Supp. 962, affd. (9th Cir. 1976) 541 F.2d 266, cert. den. (1977) 430 U.S. 915 [51 L.Ed.2d 593, 97 S.Ct. 1327] (under law of Arizona, California, Hawaii, Texas, or Alaska economic loss not recoverable in strict liability action); *Noel Trans. & Pkg. Del. Serv., Inc.* v. *General Motors Corp.* (D.Minn. 1972) 341 F.Supp. 968.)

wasteful process of litigation. Thus, if the consumer or ultimate business user sues and recovers, for breach of warranty, from his immediate seller and if the latter, in turn, sues and recovers against his supplier in recoupment of his damages and costs, eventually, after several separate actions by those in the chain of distribution, the manufacturer may finally be obliged "to shoulder the responsibility which should have been his in the first instance." ' " (*Id.*, at p. 310.)

Other jurisdictions also have gone further than California in allowing recovery for purely economic loss. The Ohio Supreme Court did so in *Iacono* v. *Anderson Concrete Corp.* (1975) 42 Ohio St.2d 88 [71 Ohio Ops.2d 66, 326 N.E.2d 267]. In that case a homeowner brought suit against a concrete supplier and contractor for damage to his driveway. The court concluded, quoting the language of *Santor* that: " ' ". . . From the standpoint of principle we perceive no sound reason why the implication of reasonable fitness should be attached to the transaction and be actionable against the manufacturer where the defectively made product has caused personal injury and not actionable when inadequate manufacture has put a worthless article in the hands of an innocent purchaser who has paid the required price for it." ' " (*Id.*, at pp. 270-271.)

The Michigan Court of Appeals in *Cova* v. *Harley Davidson Motor Company* (1970) 26 Mich.App. 602 [182 N.W.2d 800], rehearing denied November 10, 1970, held that a purchaser could maintain an action against a parts manufacturer, even though the parts complained of were purchased from a dealer and not directly from the manufacturer. The court in remanding said: "[w]e find that courts throughout the land have allowed recovery for economic loss. . . . (*id.*, at p. 809), and that "[t]he plaintiff should be given an opportunity to prove loss of profits." (*Id.*, at p. 811.)

But it is the Supreme Court of Washington which has given us the most thorough analysis of this issue. In doing so, it has drawn a sharp distinction between actions based on negligence and those based on strict liability. In *Berg* v. *General Motors Corporation* (1976) 87 Wn.2d 584 [555 P.2d 818)], a commercial fisherman sued for lost profits resulting from the alleged negligence of the manufacturer of a diesel engine and clutch. The fisherman had purchased a diesel engine from a dealer for use on his commercial fishing boat. After purchase, the engine failed several times. One breakdown was traced to an error in factory assembly. A second failure was thought to be due to either a faulty part or faulty workmanship. A third failure was due to the clutch which it was determined was not, according to the manufacturer, sturdy enough for use in commercial operations. The manufacturer however, made no effort to inform its dealers of this limitation. All of these breakdowns occurred during the fishing season.

The superior court granted summary judgment in favor of the manufacturer. The Supreme Court reversed, holding that under negligence law, purchasers are entitled to collect damages for purely economic losses, as distinguished from physical or property damages. In examining the rationale for denying recovery for an economic loss alone the Washington Supreme Court observed: "[There are] no compelling reasons for denying lost profits, per se, in negligence actions, whether against immediate or remote sellers." (*Id.*, at p. 822.)

" . . . . . . . . . . . . . . . . . . . .

" 'Foreseeability' as a limitation, only inheres in negligence. '[P]ersonal or property damage' as a limitation only inheres in strict liability." (*Id.*, at p. 823.) The court continued on to articulate several policy justifications for allowing recovery of economic loss standing alone in a negligence action:

1. *Imposition of liability on the manufacturer will not increase the hazard of indiscriminate lawsuits*, since under warranty the manufacturer is eventually obliged " ' "to shoulder the responsibility which should have been his in the first instance." ' " (*Santor* v. *A & M Karagheusian, Inc., supra*, 207 A.2d at p. 310.)

2. *Distinctions which allow recovery where the product destroys other property, yet deny recovery when the product merely disintegrates, are specious.*

3. *It is not unfair to charge a manufacturer with commercially poor performance* if he knows and consents to the use being made of his product. Foreseeability and duty to the complaining party must be proved. "A manufacturer intending and foreseeing that its product would eventually be purchased by persons operating commercial ventures, owes such persons the duty not to impair that purchaser's commercial operations by a faulty product." (*Berg* v. *General Motors Corporation, supra*, 555 P.2d at p. 823.)

As illustrated by the above cases, many jurisdictions have rejected the notion purchasers should be denied damages for purely economic losses. Were AP suing in the State of Washington, for instance, it's negligence claim would fall squarely within the *Berg* holding and be a valid cause of action. California courts, however, have not yet expressly abandoned this limitation on liability even in negligence cases. Nonetheless, even here it should be noted the California Supreme Court has never applied the *Seely* dictum to a negligence cause of action. Admittedly, some Courts of Appeal

have done so.[2] And the Supreme Court has followed the *Seely* holding that solely economic damages cannot be recovered in a strict liability action.[3] But it has not had occasion to address that issue in a negligence context. Consequently, as far as Supreme Court precedent, there remains *only dictum on the question of whether solely economic losses* can be recovered in a negligence cause of action. Accordingly, under stare decisis principles (6 Witkin, Cal. Procedure (2d ed 1971) Appeal, § 676), this court arguably is free to conclude that in negligence cases—as opposed to strict liability cases—consumers as a general rule are entitled to recover from manufacturers for foreseeable economic losses even if they did not sustain any property damage or physical injury.

We need not reach this ultimate issue, however. In a line of cases culminating in *J'Aire Corp.* v. *Gregory* (1979) 24 Cal.3d 799 [157 Cal.Rptr. 407, 598 P.2d 60], the California Supreme Court has begun to allow recovery in negligence actions where the economic loss is especially foreseeable despite the absence of physical injury or property damage. American Can seeks to distinguish these Supreme Court opinions on grounds they are not products liability cases but instead involve negligent rendering of services. But neither the language nor the logic of these opinions exempts negligent manufacture of a product. And indeed, as we shall soon see, *J'Aire* itself dealt with negligence during the construction of a structure which is as close to manufacture as it is to services.

This line of cases derives from *Biakanja* v. *Irving* (1958) 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.3d 1358]. In *Biakanja* the California Supreme Court disapproved an earlier California decision which had held that economically injured third parties did not have a right of action for the negligence of a will draftsman. (*Buckley* v. *Gray* (1895) 110 Cal. 339 [42 P. 900].) The defendant was a notary who mistakenly believed that a notarial seal could be used as a substitute for the witnesses required to make a valid formal will. The will was found to be invalid and the bequest to Biakanja found ineffective. ▮ The *Biakanja* court concluded defendants can be

---

[2]*Sacramento Regional Transit District* v. *Grumman Flexible* (1984) 158 Cal.App.3d 289 [204 Cal.Rptr. 736]; *Anthony* v. *Kelsey-Hayes Co.* (1972) 25 Cal.App.3d 442 [102 Cal.Rptr. 113] (California Courts of Appeal apply *Seely* and deny recovery sought under both strict liability and negligence theories); *International Knights of Wine, Inc.,* v. *Ball Corp.* (1980) 110 Cal.App.3d 1001 [168 Cal.Rptr. 301]; *Rodrigues* v. *Campbell Industries* (1978) 87 Cal.App.3d 494 [151 Cal.Rptr. 90]; *Shepard* v. *Superior Court* (1977) 76 Cal.App.3d 16 [142 Cal.Rptr. 612]; *Kaiser Steel Corp.* v. *Westinghouse Elec. Corp.* (1976) 55 Cal.App.3d 737 [127 Cal.Rptr. 838]; *Charles D. Warner & Sons, Inc.* v. *Seilon, Inc.* (1974) 37 Cal.App.3d 612 [112 Cal.Rptr. 425] (California Court of Appeal cases where recovery sought solely under strict liability was denied applying *Seely*).

[3]See, e.g., *William Cronin* v. *J.B.E. Olson Corp.* (1972) 8 Cal.3d 121 [104 Cal.Rptr. 433, 501 P.2d 1153] (California Supreme Court applying *Seely* disallows recovery sought only under strict liability).

liable to economically injured third parties even though they are not in privity of contract if the defendants owe some fiduciary duty or have some special relationship with these parties. This determination was reached after the court balanced six factors: (1) the extent to which the transaction was intended to affect the plaintiff, (2) the *foreseeability* of harm to the plaintiff, (3) the degree of certainty the plaintiff would suffer injury, (4) the closeness of the connection between the defendant's conduct and the injury sustained, (5) the moral blame attaching to the defendant's conduct, and (6) the need to prevent future harm. (*Biakanja* v. *Irving, supra,* 49 Cal.2d at p. 650.) (The six-part *Biakanja* test has been applied to other professional fields as well, e.g., architects, in *United States* v. *Rogers & Rogers,* (D.Cal. 1958) 161 F.Supp. 132; *Huber, Hunt, & Nichols, Inc.* v. *Moore,* (1977) 67 Cal.App.3d 278 [136 Cal.Rptr. 603] and contractors in *Sabella* v. *Wisler* (1963) 59 Cal.2d 21 [27 Cal.Rptr. 689, 377 P.2d 889].)

In *Connor* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224], the California Supreme Court applied the *Biakanja* rule and found an institutional lender liable to third parties sustaining economic injuries. Great Western was the institutional lender for housing developers. The plaintiffs purchased single-family homes in a residential tract in Ventura County. Thereafter their homes suffered serious damage from cracking caused by ill-designed foundations that could not withstand the expansion and contraction of adobe soil. Holders of promissory notes secured by second deeds of trust on the homes filed cross-complaints, alleging their security had been impaired by the damage to the homes.

There was abundant evidence the developers, who built and sold the homes, negligently constructed them without regard to soil conditions prevalent at the site. Specifically, it laid slab foundations on adobe soil without taking proper precautions recommended to it by soil engineers. When the adobe soil expanded during rainstorms two years later, the foundations cracked and their movement generated further damage. The court noted that the lender had some degree of control over the building of the homes and should have *foreseen* the developers were using improper construction methods. The connection between lender and the ultimate purchasers of the homes was enhanced by an agreement which obligated the developers to recommend Great Western to the purchasers for their homeowner loans.

In *J'Aire Corp.* v. *Gregory, supra,* 24 Cal.3d 799, the California Supreme Court modified the requirement of a fiduciary duty or special relationship in actions for loss of prospective economic advantage, relying instead on the *Biakanja* balancing approach to determine the scope of liability. J'Aire Corporation was a tenant in possession of a restaurant at the Sonoma County Airport. In 1975 the County of Sonoma contracted with Gregory, a con-

tractor, to improve the restaurant premises, including the heating and air conditioning systems. J'Aire argued that because the contractor allegedly failed to complete work on the restaurant premises within a reasonable time, the restaurant suffered loss of business and profits. In its third amended complaint J'Aire pleaded causes of action in both contract and tort. Under a contract theory, J'Aire argued it was the third party beneficiary of the contract; under a tort theory J'Aire sought damages for loss of its prospective economic gain suffered as a result of the contractor's negligent failure to complete the work within a reasonable period of time. The trial court sustained the contractor's demurrer to the third amended complaint, finding that plaintiff failed to state a cause of action. J'Aire's appeal was based only upon the cause of action for negligent interference with prospective economic gain.

The Supreme Court reversed. In applying the *Biakanja* criteria, the court found: (1) the contractor's conduct directly impinged upon J'Aire's business; (2) it was foreseeable any delay in completion would reduce J'Aire's business and profits; (3) J'Aire suffered harm; (4) the delays were closely connected to and actually caused J'Aire's injury; (5) the contractor's lack of diligence was blameworthy; and (6) public policy supported the finding of a duty of care. The court noted that by focusing judicial attention "on the foreseeability of the injury and the nexus between the defendant's conduct and the plaintiff's injury" the application of the *Biakanja* factors would effectively limit recovery for negligent interference with prospective economic advantage to situations where a duty of care was reasonably owed and breached. (*J'Aire Corp.* v. *Gregory, supra,* 24 Cal.3d at p. 808.)

*J'Aire* thus clarifies the California position on recovery for prospective economic advantage in a purely economic setting. It is in keeping with the much older standard of measuring duty by the foreseeability of the risk. Furthermore, we see no compelling reason not to extend this standard of measuring duty from a provider of services to a manufacturer of products.

We note recent Court of Appeal decisions have begun to extend the principles of *J'Aire* in a direction consistent with our opinion in this case. In *Pisano* v. *American Leasing* (1983) 146 Cal.App.3d 194 [194 Cal.Rptr. 77], the court held the manufacturer of a defective sanding machine was liable to a cabinetmaker for his lost profits and lost business opportunities when the sander ruined some cabinets he had contracted to make. American Can seeks to distinguish this case on grounds the defective product inflicted property damage (i.e., the ruined cabinets) as well as economic loss. In our view, this narrow reading of *Pisano* is not justified by the language of the opinion. The court was sensitive to the differences between the limitations on strict liability actions and negligence actions. It held the plaintiff was

only entitled to recover for physical damage to the cabinets in his product liability count. But in negligence he was entitled to recover for economic loss as well as physical damage. At no place in the opinion did the court hold the property damage to the cabinets was a prerequisite to recovery for economic loss. Indeed the only qualification it placed on recovery for economic loss was compliance with the criteria set forth in *J'Aire*. Moreover, looking beyond the language of the *Pisano,* the interpretation argued by American Can would lead to absurd results. For instance, a cabinetmaker who lost a contract because he failed to detect the defect in the sander and thus ruined one or more cabinets would be entitled to recover his economic losses. In contrast, recovery would be denied to a cabinetmaker who lost the contract because he alertly spotted the defective sander but too late to obtain a replacement and complete the order for cabinets.

In *Huang* v. *Garner* (1984) 157 Cal.App.3d 404 [203 Cal.Rptr. 800], another Court of Appeal relied heavily on *Pisano* to support its conclusion "that the California Supreme Court in *J'Aire Corp.* v. *Gregory* [citation omitted] changed the traditional rule of nonrecovery of economic loss in negligence actions . . . ." (*Ibid.,* at p. 420.) In this case, plaintiffs had purchased an apartment building several years after its construction. They sued, among others, the original builder, the designer, and the civil engineer. One of their causes of action was for economic losses due to defective design and construction which had not yet produced physical injury or property damage. The trial court granted partial nonsuit limiting plaintiffs to physical damages only. The Court of Appeal reversed in language which has some relevance for the instant case: "It was certainly foreseeable that defects in construction of the types asserted by plaintiffs in this case would damage subsequent purchasers of the property as well as subsequent residents. There was testimony presented that the defects in the building are dangerous, despite the fact that for approximately 17 years they have not caused personal injury to any tenant.

". . . Certainly defendants' defective construction of the building directly caused the injuries suffered by plaintiffs. Furthermore, considering the importance of the minimum standards for housing set forth in . . . the Uniform Building Code, the violation of those standards involves sufficient 'moral blame' to meet the fifth of the six criteria adopted in *J'Aire*; . . . . [A] 'policy of preventing future harm' also supports the eligibility to receive economic damages in this case because such a policy inheres in every building code and would be advanced by penalizing a violation thereof." (*Huang* v. *Garner, supra,* 157 Cal.App.3d at p. 424, italics added.)

As these two recent Court of Appeal opinions illustrate, *J'Aire*'s application of the *Biakanja* balancing test in this area of tort law represents a significant extension of liability for purely economic losses beyond inten-

tional acts and beyond the special duties of care imposed on professionals such as lawyers and architects. At the same time these criteria narrow the scope of duty when the plaintiff only sustains an economic loss. ■ Applying the six criteria to the case at bar we find:

(1) The contract between Gencan and American Can was for supplying cans necessary to the execution of Ales-Peratis contract. The performance of the contract directly affected appellant's ability to fully and timely perform its contract with its customer, and AP alleged both Gencan and American knew this. The record of the conversation between the agents for Gencan and American Can shows they both knew AP needed and had requested a specific type of can suitable for packing a certain type of seafood. Furthermore, American Can's practice of supplying dealers should have alerted it to the fact any breach on its part could foreseeably lead to a lost business opportunity and thereby lost profits on the part of AP. Thus American Can's performance was intended to, and did directly affect Ales-Peratis.

(2) AP alleges American Can could have reasonably foreseen that if the contract (between Gencan and American Can) was not properly performed AP's ability to fulfill its contract would be affected. Under the facts alleged, that result was clearly foreseeable.

(3) Because American Can did not properly perform its contract with Gencan, AP was prevented from fulfilling its contract and lost the profits it would have received had it not been prevented from doing so.

(4) The close connection between American Can's acts and the damages suffered is pled and is patent.

(5) The moral blame attaches to American Can because it shipped obviously defective goods which if actually used to pack abalone would have been subject to acid corrosion from the product packed in those cans which, in turn, may have proved hazardous to the health of the ultimate consumers of the abalone.

(6) Because of the close connection between American Can and AP and the high degree of foreseeability of economic harm, policy considerations warrant the imposition of liability. As an additional policy consideration it should be noted society gains nothing from tolerating a level of negligence by container manufacturers which allows them to ship defective and potentially dangerous cans which will be used to pack foods destined to be purchased and eaten by hapless consumers. Indeed the general public has a stake in the early detection of these defective cans and their immediate removal from the stream of commerce before they cause injury. Canners and other intermediate enterprises should be encouraged to do just that.

Shifting this economic loss to the can manufacturer accomplishes both societal objectives. First, it discourages can manufacturers from shipping defective cans they have reason to know will be used to pack food distributed to the general public. Second, it encourages canners and other intermediate enterprises to detect and remove the offending cans from the stream of commerce before they can cause harm to the ultimate consumers.

■ American Can counters that to permit a tort recovery in this case would be to undermine the California Uniform Commercial Code. To substantiate its claim that the California Uniform Commercial Code should govern, it points out that the parties are equally powerful commercial entities. This suggestion is at odds with the policies underlying tort and contract principles. A purchaser has a right to a usable and safe product and should not have to bargain for it.

Furthermore, for American Can to suggest that a seller of goods has two acceptable prices to bargain for—a lower price for cans *without* warranty, which may or may not be fit for packing food so it is edible and healthy, and a higher price for cans *with* a warranty which again may or may not be suitable for packing foods—assumes that a packager of foods would be willing to gamble on receiving cans which would be not only worthless, but also if used possibly expose his customers to harm and himself to liability.

We need not reach the main problem troubling the *Seely* court—whether a manufacturer who distributes a product on the consumer market is liable in tort to all the thousands or millions of unknown customers who may suffer economic losses because the product turns out to be defective in some way. Here we have a far higher degree of foreseeability of economic injury and a much narrower range of potential liability. ■ Thus, applying the principles of *J'Aire* and *Biakanja* to the facts as alleged, we hold the appellant has stated a cause of action for negligent interference with prospective economic advantage. A triable issue exists whether the manufacturer knew a large quantity of its product had been ordered for a single customer and for a specific purpose. A triable issue also exists as to whether the manufacturer shipped negligently manufactured products not suitable for that purpose, indeed products which might have been dangerous to human health if the purchaser actually used them for the intended purpose. And, a triable issue exists whether respondent could reasonably foresee appellant would suffer economic injury if the shipment of cans was defective. Accordingly, the trial court erred in granting the motion for summary judgment. Ales-Peratis should be afforded an opportunity to prove the elements of its tort cause of action at trial.

## DISPOSITION

The judgment is reversed and remanded for further proceedings consistent with this opinion.

Lillie, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied February 28, 1985, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied April 25, 1985. Mosk, J., and Lucas, J., were of the opinion that the petition should be granted.