174 Cal.App.4th 1114 (2009)
PAUL ORAVECZ, Plaintiff and Appellant,
v.
NEW YORK LIFE INSURANCE COMPANY et al., Defendants and Respondents.
No. B206066.
Court of Appeals of California, Second District, Division One.
May 11, 2009.
*1118 Paul Oravecz, in pro. per., for Plaintiff and Appellant.
Barger & Wolen, Robert J. McKennon and Robert E. Hess for Defendants and Respondents.

OPINION
WEISBERG, J.[*]

SUMMARY
When he learned his investments in "Tradex," an offshore foreign currency trading fund, were worthless, Paul Oravecz sued Steve Roth and Roth's alleged employer, respondents New York Life Insurance Company and NYLife Securities, Inc. Roth was the broker-dealer who orchestrated, managed and controlled Oravecz's investments in Tradex. Oravecz asserted numerous causes of action against respondents, premised primarily on allegations that Roth, acting under the authority of and inadequately supervised by respondents, made materially false and misleading representations to convince Oravecz that his investments in Tradex were sound when, in fact, the trading fund was no more than a classic Ponzi scheme. Respondents demurred to three of the causes of action in the third amended complaint. The trial court sustained that demurrer without leave to amend. Later, respondents moved for summary judgment or, in the alternative, summary adjudication on the remaining claims. That motion too was granted. We conclude the trial court properly granted the summary judgment motion, but erred in sustaining the demurrer to the cause of action for breach of fiduciary duty. In all other respects, we find no error and affirm.

FACTUAL AND PROCEDURAL BACKGROUND
In review of the trial court's ruling sustaining a demurrer without leave to amend, we must accept the properly pled factual allegations of the operative *1119 pleading as true. (Quelimane Co. v. Stewart Title Guaranty Co. (1998) 19 Cal.4th 26, 38 [77 Cal.Rptr.2d 709, 960 P.2d 513].)
Oravecz filed this action on December 22, 2005, against New York Life and Roth.[1] The lawsuit alleged a statutory claim for securities fraud under California's Corporate Securities Law of 1968 (Corp. Code, § 25000 et seq.), and common law claims for negligence, negligent misrepresentation and breach of fiduciary duty. After demurrers were sustained with leave to amend to previous iterations of the complaint, Oravecz filed the operative third amended complaint (the TAC, or complaint), accompanied by a compendium of exhibits. The complaint alleged the following:
(1) A claim against all defendants for negligent misrepresentation;
(2) A claim for negligence against Roth, alleging he violated his duties as a licensed securities broker to conduct due diligence to ensure both that Tradex was a worthy investment, and that Oravecz was a qualified investor who would not be exposed to extreme financial risk;
(3) A claim that New York Life had violated its own policies by failing to adequately train or supervise Roth, its employee and registered representative, and by advising him that currency tradingsuch as that involved in the Tradex fund, of which New York Life was awaredid not constitute securities-related transactions and that Roth's involvement in such endeavors would not endanger his securities licenses;
(4) A claim that New York Life and Roth breached their respective duties as fiduciaries by, among other things: (a) failing to conduct due diligence, (b) failing to ensure the Tradex fund was a legitimate, sound and trustworthy investment, (c) providing false information about Tradex and the manner and use of funds invested by Oravecz, and the return Oravecz should expect to earn on his risky investment, and (d) that New York Life hired Roth, knowing he had a criminal record, thereby jeopardizing Oravecz by placing a convicted criminal in a position of trust;
(5) A claim that Roth and New York Life had unlawfully offered to sell securities in violation of Corporations Code section 25401 (section 25401),[2] by means of oral or written communications containing material misstatements and/or omissions of fact;
(6) A claim against New York Life for negligently hiring Roth, a convicted criminal, a high school dropout and an individual whom New York Life had failed adequately to train to perform his duties; and
*1120 (7) A claim for negligent interference with prospective economic advantage alleging New York Life and Roth caused at least $10 million in damage to his established and prospective business relationships.
Oravecz alleged that, commencing in 1996, when Roth was an "agent" of New York Life Insurance Co., and a "registered representative" of NYLife Securities, Inc.,[3] Roth sold him security investments in Tradex Fund. Oravecz alleged that Roth held himself out as an employee of New York Life. Oravecz alleged that Tradex turned out to be a "Ponzi" scheme. Acting on Roth's advice and instructions, Oravecz lost the money he invested in Tradex.
New York Life demurred to the causes of action for negligent hiring, negligent interference with prospective economic advantage, and breach of fiduciary duty. It argued the claim for negligent hiring lacked merit because there were no allegations New York Life knew hiring Roth (who, in 1991, pled "no contest" to a charge of negligent discharge of a firearm) was likely to create a particular hazard or that, even if it did, that the particular risk Roth may have posed had materialized. On the cause of action for negligent interference with prospective economic advantage, New York Life argued nothing in the TAC alleged it had damaged or impacted Oravecz's relationships with his business clients, and that Oravecz failed to plead the essential elements to establish the claim. Finally, as for the cause of action for breach of fiduciary duty, New York Life arguedbased entirely on federal case lawthat Oravecz's allegation in the TAC that Roth was vested with discretionary trading authority was contradicted by exhibits attached to that pleading, of which the court could take notice, demonstrating a definitive lack of such authority.
The trial court sustained New York Life's demurrer without leave to amend.[4]
After answering the complaint, New York Life moved for summary judgment or, in the alternative, summary adjudication. It argued that undisputed facts demonstrated the Company could not be liable for damages Oravecz suffered as a result of his Tradex investments, because Roth was not an employee of New York Life, but an independent contractor vested only *1121 with the authority to sell securities products approved by New York Life, which did not include Tradex. New York Life presented evidence it had not known about nor approved Roth's sale of Tradex and that, by engaging in that business, Roth had violated New York Life's policies and exceeded the scope of his authority. Thus, the Company argued it had no duty to supervise him in that capacity. In addition, New York Life asserted Oravecz's statutory fraud claim was time-barred, and that both the fraud and negligent misrepresentation causes of action must fail because undisputed evidence showed Oravecz lacked any reason to believe Tradex was a legitimate investment with which New York Life was affiliated or in any way involved. The motion was opposed by Oravecz. New York Life replied. It also lodged evidentiary objections to most of the exhibits Oravecz filed in opposition to the motion.
The trial court granted the motion for summary judgment and summary adjudication as to each issue for which that ruling had been sought. The court found the "fundamental problem" was that Oravecz had failed to present "competent evidence to refute the showing of New York Life and to demonstrate the existence of triable issues of fact." Specifically, the court found (1) Roth was not an employee of New York Life, but an independent contractor with a nonexclusive relationship with New York Life that left him free to sell other products over which the Company had no control; (2) there was no evidence New York Life made any misrepresentation to Oravecz, nor any evidence to justify Oravecz's belief that any of the money he paid to Tradex constituted an investment in a program approved by New York Life; (3) New York Life had no duty to supervise Roth with respect to his sale of nonapproved investment products, such as Tradex; (4) there was no evidence New York Life was aware Roth had engaged in such sales, was unfit for his position or that he posed any harm to his clients; and (5) the statutory securities fraud claim was barred by the two-year statute of limitations (§ 25507, subd. (a)), because Oravecz admitted he knew in mid-2003 Tradex was a Ponzi scheme, and this action was not filed until late December 2005. The court sustained New York Life's evidentiary objections. Oravecz appeals from the subsequently entered judgment and the order sustaining New York Life's demurrer to the TAC.

DISCUSSION
Oravecz contends the trial court erred in sustaining New York Life's demurrer without leave to amend and in granting its subsequent motion for summary judgment or adjudication. We conclude the trial court erred by sustaining the demurrer as to the fiduciary duty claim. We also conclude the summary judgment motion was properly granted.

*1122 1. The Demurrer.

Oravecz contends the trial court erred in sustaining New York Life's demurrer to the causes of action for breach of fiduciary duty, negligent hiring and negligent interference with prospective economic advantage. He insists the complaint contains sufficient allegations to support the fiduciary duty claim, and he should have been given a chance to amend to cure any pleading problems as to the other two claims, alleged for the first time in the TAC.

a. The court erred by sustaining the demurrer to the claim for breach of fiduciary duty.

(1) New York Life's demurrer to Oravecz's claim for breach of fiduciary duty was premised entirely on federal authority. New York Life never explained why federal case law should control resolution of a state common law claim.[5] The reason they did not do so is obvious. The federal cases on which New York Life relies require an affirmative showing that the stockbroker (alleged fiduciary) exercised discretionary trading authority over its client's investment accounts. (See, e.g., Independent Order v. Donald, Lufkin & Jenrette (2d Cir. 1998) 157 F.3d 933, 940-941 ["[T]here is no general fiduciary duty inherent in an ordinary broker/customer relationship. [Citation.] Such a duty can arise only where the customer has delegated discretionary trading authority to the broker."].) Under this body of law, the fiduciary duty claim fails in the absence of evidence of such discretionary authority. Oravecz's claim, however, is based on and controlled by state law. His cause of action for breach of fiduciary duty is simply a garden variety, common law claim for which the allegations in the TAC are adequate.[6]
(2) Whether a person or entity owes a legal duty to another is primarily a question of law for the court. (6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 860, p. 85.) To state a claim of breach, the plaintiff need only allege the person acted as his fiduciary (e.g., stockbroker), acted on the plaintiff's behalf with respect to his investments, failed to act as a reasonably *1123 careful broker would have acted under the same or similar circumstances, and that his failure to do so was a substantial factor in causing the plaintiff harm. (See CACI No. 4101.)
(3) It is well established in this state that the relationship between a stockbroker or investment advisor and his/her customer is fiduciary in nature, imposing on the former the duty to act in the highest good faith toward the customer. (Twomey v. Mitchum, Jones & Templeton, Inc. (1968) 262 Cal.App.2d 690, 708-709 [69 Cal.Rptr. 222]; Duffy, supra, 215 Cal.App.3d at p. 1534; Blankenheim v. E. F. Hutton & Co. (1990) 217 Cal.App.3d 1463, 1475 [266 Cal.Rptr. 593].) In the case of brokers engaged in trading speculative securities (such as those involved in the Tradex transactions), the broker's fiduciary duty specifically requires the broker to (1) ensure the customer understands the investment risks in light of his or her actual financial situation, (2) inform the client that speculative investments are unsuitable if the broker believes the client is not able to bear the financial risks involved, and (3) refrain from soliciting the client's purchase of speculative securities if the broker considers them to be beyond the customer's risk threshold. (Duffy, supra, 215 Cal.App.3d at pp. 1532, 1534, 1538; CACI No. 4105.)
Oravecz alleges Roth acted as his investment advisor/stockbroker, that, while engaged in those activities, Roth was an employee and acting on behalf of New York Life (with actual or implied authority to engage in Tradex activities), that Roth's actions were sanctioned by or imputed to his employer, and that he was damaged by defendants' breach. Oravecz also alleges Roth and New York Life failed to act reasonably, and breached their fiduciary duties by, among other things, failing to conduct due diligence to discover whether Tradex was a legitimate and sound investment, encouraging Oravecz to rely on New York Life's representations, actively misleading Oravecz to make him believe Tradex was a safe investment, misrepresenting the returns Oravecz was likely to earn on his investment, and encouraging him to use credit cards to make his investments, even though Roth knew that doing so would cause Oravecz serious financial harm if the funds were lost, and exposing him to inordinate financial risk.
The TAC adequately states a prima facie claim for breach of fiduciary duty against Roth and New York Life. There is no question that a stockbroker or investment advisor owes a duty of care to an investor. The precise scope of that duty depends on the specific circumstances presented in a given case, and is typically a question of fact.

*1124 b. The demurrer was properly sustained as to the claim for negligent hiring.

In his sixth cause of action, pled in the TAC for the first time,[7] Oravecz alleged New York Life is liable to Oravecz, its preexisting client, for "negligently hiring" Roth, a worker unqualified to perform financial services requiring specific and substantial skills. By hiring Roth, Oravecz claims New York Life failed to exercise reasonable care to ensure he had the requisite degree of integrity, trustworthiness, skills and experience necessary to perform the work of an insurance and securities agent. Oravecz further alleged that, in conscious disregard for Oravecz's rights and financial safety, New York Life hired and retained Roth placing him in a "dangerous financial position," notwithstanding the Company's awareness of Roth's criminal record, the fact that he was a high school dropout, and Roth's failure to attend mandatory training sessions.
(4) Under California law, an employer may be liable to a third person for its negligent hiring of an incompetent or unfit employee, or for failure to use reasonable care to discover the employee's unfitness before hiring him or her. (Underwriters Ins. Co. v. Purdie (1983) 145 Cal.App.3d 57, 69 [193 Cal.Rptr. 248]; Evan F. v. Hughson United Methodist Church (1992) 8 Cal.App.4th 828, 836 [10 Cal.Rptr.2d 748].) Liability in such situations, however, is premised on the principle that the employee poses a particular hazard. (See Evan F. v. Hughson United Methodist Church, supra, 8 Cal.App.4th at p. 836.) It is the risk that the employee, based on his or her history, poses a particular danger or is likely to act a certain way that is the linchpin of the employer's liability. (Id. at p. 837.) Under this theory, an employer cannot be liable for "consequences involving less particular, even speculative, hazards." (Ibid.)
Oravecz alleges New York Life is liable for his failed investment in the Tradex Ponzi scheme, in part, because it hired an undereducated individual who once pled no contest for negligently discharging a firearm.[8] This *1125 contention is absurd. As the trial court correctly found, "[t]here is no nexus alleged which can logically be inferred between the harm [suffered by Oravecz] and Mr. Roth's educational level or his prior criminal conviction." Except for a passing reference, Oravecz does not even address the ruling on the demurrer to this cause of action in his opening brief.[9]
It is an abuse of discretion to sustain a demurrer if there is a reasonable probability a defect can be cured by amendment. (Blank v. Kirwan (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) The burden, however, is on the plaintiff to demonstrate how the complaint can be amended to state a valid cause of action. (Ibid.) Oravecz failed to meet this burden. He does not propose any amendment or new or revised allegations that, if given the opportunity to plead, would cure the defects in this cause of action. His failure to do so constitutes a failure to meet his burden on appeal. (Ibid.; Schifando v. City of Los Angeles (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].) The claim was properly dismissed.

c. The demurrer was properly sustained to the cause of action for negligent interference with prospective economic advantage.

Oravecz must plead and prove numerous elements to proceed on a claim for negligent interference with prospective economic advantage against New York Life. He must show that (1) an economic relationship existed between himself and a third party, one which promised Oravecz probable future economic benefits or advantage; (2) New York Life was aware an economic relationship existed; (3) New York Life engaged in wrongful conduct; (4) it was reasonably foreseeable the Company's conduct would interfere with or disrupt Oravecz's economic relationship, if it failed to exercise due care; (5) New York Life failed to exercise due care (i.e., was negligent); (6) Oravecz's economic relationship with the third party suffered actual disruption or interference; and (7) New York Life's conduct caused Oravecz to lose some or all of the economic benefit or advantage he had enjoyed from his business relationship with the third party. (J'Aire Corp. v. Gregory (1979) 24 Cal.3d 799, 804 [157 Cal.Rptr. 407, 598 P.2d 60]; cf. Ales-Peratis Foods Internat., Inc. v. American Can Co. (1985) 164 Cal.App.3d 277, 289-290 [209 Cal.Rptr. 917]; BAJI No. 7.82.1 (spring ed. 2008).)
*1126 In the complaint, Oravecz alleges New York Life and Roth owed him duty of care to refrain from interfering with Oravecz's actual or prospective business advantage arising from his existing business relationships which were lucrative, well established, about which New York Life was aware, and which promised the potential for millions of dollars in future business. Oravecz claimed New York Life failed to take reasonable precautions to avoid interfering with Oravecz's prospective business opportunities, or to avoid causing him financial harm. That wrongful conduct included the Company's negligent retention of Roth, a convicted criminal and a high school dropout, and its failure to enforce its policies regarding the training and supervising of its agents. Finally, Oravecz alleged it was "clearly foreseeable" that New York Life's wrongful conduct would and did damage his relationships with his business clients, causing him damages in excess of $10 million.
(5) The trial court did not err in sustaining the demurrer to this claim. First, Oravecz failed to allege any "independently wrongful conduct" by New York Life, as opposed to alleged misdeeds of its agent, Roth. "[A] plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of pleading and proving that the defendant's interference was wrongful `by some measure beyond the fact of the interference itself.' [Citation.]" (Della Penna v. Toyota Motor Sales, U.S.A., Inc. (1995) 11 Cal.4th 376, 392-393 [45 Cal.Rptr.2d 436, 902 P.2d 740], fn. omitted; see Korea Supply Co. v. Lockheed Martin Corp. (2003) 29 Cal.4th 1134, 1158-1159 [131 Cal.Rptr.2d 29, 63 P.3d 937].) Moreover, to the extent it may be said that Oravecz alleged actionable independent conduct on the part of New York Life, that conductthe hiring and retention of an undereducated individual, convicted of a crime unrelated to the field of securities trading, and the Company's failure to enforce its policiesbears no logical relationship to any disruption to Oravecz's unspecified business relationships. Once again, Oravecz failed to demonstrate how the defects in the complaint could be cured, if he were given a chance to amend. He fell short of satisfying his burden as appellant. (Blank v. Kirwan, supra, 39 Cal.3d at p. 318; Schifando v. City of Los Angeles, supra, 31 Cal.4th at p. 1081.) The seventh cause of action was properly dismissed.

2. The Summary Judgment Motion

a. The standard of review.

Summary judgment is properly granted if the record demonstrates that there is no triable issue as to any material fact and the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment "`may prove an affirmative *1127 defense, disprove at least one essential element of the plaintiff's cause of action [citations] or show that an element of the cause of action cannot be established . . . .'" (Stonegate Homeowners Assn. v. Staben (2006) 144 Cal.App.4th 740, 750 [50 Cal.Rptr.3d 709].) Once the defendant makes this showing, the burden shifts back to the plaintiff to show that a triable issue of fact exists as to that cause of action or defense. (Code Civ. Proc., § 437c, subd. (p)(2).) In doing so, the plaintiff cannot rely on the pleadings, "but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . ." (Ibid.) A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. . . ." (Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].)
We review the trial court's decision to grant a motion for summary judgment de novo. (Reyes v. Van Elk, Ltd. (2007) 148 Cal.App.4th 604, 609 [56 Cal.Rptr.3d 68].) A trial court's stated reasons for granting summary judgment do not bind us; we review the court's ruling not its rationale. (Continental Ins. Co. v. Columbus Line, Inc. (2003) 107 Cal.App.4th 1190, 1196 [133 Cal.Rptr.2d 199].)

b. Summary judgment was properly granted on the remaining claims.

New York Life moved for summary judgment or, in the alternative, summary adjudication, on the remaining claims alleged against it, the first cause of action for negligent misrepresentation, the third cause of action for negligent supervision, and the fifth cause of action for securities fraud in violation of section 25401. The Company argued undisputed evidence established it had no liability to Oravecz because Roth was never its employee. Rather, he was an independent contractor vested only with authority to sell securities products approved by New York Life. In selling Tradex, which was not an approved New York Life product, Roth exceeded the scope of that authority. Finally, New York Life maintained Oravecz's statutory claim was time-barred.
Oravecz opposed the motion. His opposition papers included an "Exhibit Index." In support of his exhibit index, Oravecz submitted a declaration attesting that the exhibits contained therein "represent[ed] true and correct copies of the [24 identified] documents or selected excerpts thereof . . . ." New York Life asserted objections to 17 of the 24 exhibits in Oravecz's index. The objections were sustained. The minute order does not state the grounds for the court's ruling. However, based on what apparently transpired *1128 at the hearing,[10] the parties seem to agree the trial court rejected Oravecz's evidence as incompetent or not properly authenticated. Oravecz does not take issue with the court's ruling as to any particular exhibit or document. Instead, he maintains the ruling was simply wrong because, "[t]he fact is, [his] evidence is authenticated via a Declaration Authenticating Exhibits" and his appeal should succeed on this basis alone. We reject this contention. To the extent necessary, we address the trial court's evidentiary ruling as to specific exhibits as they relate to matters discussed below.

c. Undisputed evidence established that New York Life made no negligent misrepresentation.

(6) The Supreme Court has held: "Negligent misrepresentation is a separate and distinct tort, a species of the tort of deceit. `Where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit.' [Citations.]" (Bily v. Arthur Young & Co. (1992) 3 Cal.4th 370, 407 [11 Cal.Rptr.2d 51, 834 P.2d 745].) "The elements of a cause of action for negligent misrepresentation are: `1. The defendant must have made a representation as to a past or existing material fact[;] [¶] 2. The representation must have been untrue; [¶] 3. Regardless of his actual belief the defendant must have made the representation without any reasonable ground for believing it to be true; [¶] 4. The representation must have been made with the intent to induce plaintiff to rely upon it; [¶] 5. The plaintiff must have been unaware of the falsity of the representation; he must have acted in reliance upon the truth of the representation and he must have been justified in relying upon the representation[;] [¶] 6. And, finally, as a result of his reliance upon the truth of the representation, the plaintiff must have sustained damage.' [Citations.]" (Continental Airlines, Inc. v. McDonnell Douglas Corp. (1989) 216 Cal.App.3d 388, 402 [264 Cal.Rptr. 779].) Oravecz never asserts that New York Life made direct representations to him regarding Tradex. Rather, his communications with New York Life went through Roth. Oravecz insists the Company is liable by virtue of its status as Roth's alleged employer.
New York Life argued it could not be liable under the doctrine of respondeat superior for Roth's conduct with respect to the Tradex investment because the evidence demonstrates Roth acted as an independent contractor, not as an employee or exclusive agent of New York Life in selling the Tradex product, and had no actual or ostensible authority to sell the Tradex product on behalf of New York Life.
*1129 Sidestepping the dearth of evidence on the issue of whether Roth was actually employed by New York Life, Oravecz asserts the doctrine of respondeat superior applies because, Roth was a "captive agent" of New York Life, or the functional equivalent of an employee. As such, he was precluded from participating in any securities transactions, other than those sanctioned by New York Life. The trial court disagreed, and found the evidence showed Roth was an independent contractor. He maintained a nonexclusive business relationship with New York Life, set his own working hours and conditions, and was free to and did sell products from other companies that were not associated with New York Life, sales over which New York Life maintained no control. The record supports this finding.
Declarations submitted in support of the motion by Roth and Wayne Bragg, Roth's former supervisor and the managing partner of the Company's Los Angeles office, confirm Roth acted as an independent contractor. When he began working with NYLife Securities, Inc., Roth signed a "Registered Representative Agreement," by which he agreed his status as a "Representative [would be as] an independent contractor," and that nothing in the agreement "shall be construed to create the relationship of employer and employee between" New York Life and himself. Roth entered into a similar arrangement with New York Life Insurance Company, when he agreed to become its "agent" and to solicit insurance policies. The written contract between Roth and New York Life Insurance Company states that "[n]either the term `agent' . . . nor anything in [Roth's] contract with [New York Life Insurance Company] . . . shall be construed as creating the relationship of employer and employee between [New York Life Insurance Company] and the Agent [Roth]." Roth's status never changed during his tenure with either Company. As an "agent" or "representative" of New York Life, Roth always controlled his own schedule and the manner in which he performed his work. He was free to decide whether or whom to hire as assistants, free to solicit sales as he chose, free to determine which approved insurance and investment products (including some from entities other than New York Life) best suited his clients' needs, and paid based only on commissions earned.
Oravecz submitted no competent evidence to contradict this evidentiary presentation. Instead, he relied primarily on the claim that Roth allegedly received an annual "W-2" tax form from New York Life. (Oravecz does not cite to, and our independent review of the record did not reveal any W-2 forms for Roth.) He also relied on some advertisements and correspondence to support his contention that Roth was an employee. This evidence is insufficient to raise a material factual issue.[11] As for the "W-2" form, under *1130 Internal Revenue Code guidelines, Roth was considered a "statutory employee" because of his full-time status as a life insurance agent. (See 26 U.S.C. § 3121(d)(3).) As such, New York Life was required to withhold social security and Medicare on his behalf, but not income tax. The Internal Revenue Service does not consider statutory employees common law employees. Indeed, one cannot be both. (See Nicholas v. C.I.R. (July 23, 2001) U.S. Tax Ct. Summary Opn. 2001-106 [2001 WL 1922742, p. *3 ("`[s]tatutory employees' are individuals in specified occupation groups who are not common law employees")].)
(7) In sum, Oravecz failed to defeat New York Life's evidentiary showing that Roth was an independent contractor. The issue is pivotal because, for vicarious liability to attach through the doctrine of respondeat superior for a tort committed by an employee within the scope of his employment, Oravecz must demonstrate the employer had the power and ability to control the method and the results of Roth's professional activities. (See White v. Uniroyal, Inc. (1984) 155 Cal.App.3d 1, 25 [202 Cal.Rptr. 141], overruled on other grounds in Soule v. General Motors Corp. (1994) 8 Cal.4th 548 [34 Cal.Rptr.2d 607, 882 P.2d 298] [if principal controls only the results of an individual's work, and not the means by which it is accomplished, the individual is considered an independent contractor].)
The trial court was correct in finding New York Life could not be liable for negligent misrepresentation, because there is no evidence it made any direct representations to Oravecz or about Tradex, as opposed to those made by Roth. Moreover, none of the payments Oravecz made on his Tradex investments were made to or through New York Life. Rather, at Roth's instruction, all the checks Oravecz wrote depositing funds into his Tradex account were made payable to "Lye Chye Chua," an individual Oravecz identified as the "brother or cousin or whatever" of Susan Lok, an independent currency trader and mutual acquaintance of Roth and Oravecz. Apart from Oravecz's deposition testimony that Roth told him to make payment to Chua or Lok, the record contains no evidence indicating that either Lok or Chua were affiliated with or acted on behalf of New York Life. And finally, Oravecz concedes he made no effort to contact New York Life to verify Roth's representations regarding the Company's connection with Tradex. On this record, we find no fault with the trial court's finding that there was no basis on which Oravecz *1131 could legitimately have believed any payment he made on his Tradex account constituted an investment in a program sanctioned or approved by New York Life.

d. There is no merit in the claim of negligent supervision.

(8) Relying on Asplund v. Selected Investments in Financial Equities, Inc. (2000) 86 Cal.App.4th 26 [103 Cal.Rptr.2d 34] (Asplund), New York Life argued it could not be liable for negligent supervision of Roth because, as a broker/dealer, it had no duty to supervise its registered representatives/agents, who are independent contractors, with respect to unauthorized business transactions. In Asplund, the plaintiffs purchased promissory notes issued by Medco, a medical equipment company, from Joseph Tufo, a registered representative of the defendant broker/dealer SIFE (Selected Investments in Financial Equities, Inc.). (Id. at p. 29.) Eventually, the SEC (Securities and Exchange Commission) enjoined Medco from offering or selling the promissory notes, which were no more than "`an elaborate Ponzi scheme.'" (Ibid.) Investors sued, seeking, on various bases, to impose vicarious liability on SIFE for Tufo's actions, as well as direct liability against SIFE for negligent supervision. (Id. at p. 30.) SIFE moved for summary judgment on the latter claim on the ground that (1) Tufo was an independent contractor, not an employee, (2) Tufo lacked actual or apparent authority to sell the investment at issue, and (3) SIFE had no notice of, and in no way benefitted from, the transaction. The appellate court affirmed summary judgment in favor of SIFE. It held "where, as here, the registered representative is not an employee of the broker-dealer, has no actual or apparent authority to sell the investment at issue, and the broker had no notice of and did not in any way benefit from the transaction, the broker-dealer has no such duty [to supervise sales by its registered representatives of such investments]." (Id. at p. 29.)
Oravecz contends Inter Mountain Mortgage, Inc. v. Sulimen (2000) 78 Cal.App.4th 1434 [93 Cal.Rptr.2d 790] (Sulimen), not Asplund is controlling here. He is mistaken. In Sulimen, the plaintiff sought to impose vicarious liability under the theory of respondeat superior against a mortgage broker that processed a fraudulent loan submitted by a licensed real estate agent employed by the defendant broker. The appellate court reversed a grant of summary judgment in favor of the broker on the ground the agent was employed by the broker when he submitted the fraudulent loan application. (Id. at p. 1440.) The court found the risk that one of the broker's loan representatives might submit a fraudulent application was a generally foreseeable risk inherent in and incidental to the broker's business. The agent's employment as a real estate agent placed him in a position in which he had the ability to submit fraudulent loan applications, an occurrence neither so unusual or startling that it would seem unfair to include the loss resulting *1132 from such conduct as a cost of doing business. Though the broker may not have known about its agent's fraud, it was vicariously liable for that conduct if the agent committed it while holding himself out as the brokers' representative. (Id. at p. 1442.)
Oravecz insists Sulimen governs our decision, based on his repeated assertion that Roth was employed by New York Life. However, repeatedly asserting that something is a "fact" will not, by itself, make that assertion true. By the time the summary judgment motion was heard, this matter was well beyond the pleading stage. The evidentiary record established beyond question that New York Life did not treat Roth as an employee, that Roth did not consider himself a Company employee, and that Roth never held himself out as such to Oravecz in connection with the Tradex transactions.[12] We agree with Asplund. Under the sound principles articulated therein, New York Life had no duty to supervise Roth's unauthorized sale of unapproved securities. This is particularly true where, as here, New York Life was not aware Roth was selling the Tradex product and where there is no evidence the Company benefitted from the transactions.

e. The statutory securities fraud claim is time-barred.

Oravecz also takes issue with the trial court's grant of summary adjudication as to his claim of securities fraud in violation of section 25401, based on its finding that the claim was time-barred by the two-year statute of limitations of section 25507, subdivision (a). New York Life advanced, and the trial court relied on, the wrong statute. However, the court's erroneous choice of grounds for its ruling does not doom the judgment; the securities fraud claim is barred by the statute of limitations, just not the one on which the trial court relied.[13] The trial court's stated reasons for granting summary judgment do not bind us. We review the ruling, not the court's rationale. (D'Amico v. Board *1133 of Medical Examiners (1974) 11 Cal.3d 1, 18-19 [112 Cal.Rptr. 786, 520 P.2d 10]; Continental Ins. Co. v. Columbus Line, Inc., supra, 107 Cal.App.4th at p. 1196.)[14]
(9) Section 25401 prohibits the making, whether orally or in writing, of an untrue statement of material fact or omitting to state a material fact necessary in order to make a statement made, in light of the circumstances under which it is made, not misleading. The statute does not apply to simple nondisclosure. (Lynch v. Cook (1983) 148 Cal.App.3d 1072, 1088 [196 Cal.Rptr. 544].) It requires the defendant to have made a false or misleading material representation or omission. A violator of section 25401 is liable to anyone who buys a security from him. (§ 25501.) Liability attaches unless the defendant can prove the plaintiff knew the facts concerning the untruth or omission, or that the defendant exercised reasonable care and did not know of the untruth or omission. (Ibid.) In general, a cause of action for violation of section 25401 accrues when the buyer discovers the fraud. (See Menke v. Rand Mining Co. (1947) 81 Cal.App.2d 169, 172 [183 P.2d 755].)
Section 25506 prescribes the statute of limitations applicable to actions for violations of section 25501. Since January 2005, actions brought under that statute are required to be filed within five years after the act or transaction constituting the violation, or no later than two years after discovery by the plaintiff of the facts constituting the violation, whichever is earlier. (§ 25506, subd. (b).)
Oravecz wrote to New York Life on June 23, 2003, complaining about Tradex being a Ponzi scheme, and that he believed Roth had operated the offshore investment scam under the auspices of New York Life and in his capacity as its employee and licensed representative. In addition, although the reporter's transcript is not part of the appellate record, the minute order notes that, during oral argument in the hearing on the summary judgment motion, Oravecz specifically stated to the court that "he knew Tradex was a Ponzi scheme in 2003." On this record, it is clear Oravecz had discovered facts constituting the alleged violation of section 25401 at least by June 23, 2003. His claim for securities fraud in violation of that statute, filed in December 2005, is time-barred.

*1134 DISPOSITION
The order sustaining New York Life's demurrer to the breach of fiduciary duty claim is reversed, and the matter is remanded to the trial court for further proceedings on that cause of action.[15] In all other respects, the judgment is affirmed. Each party shall bear its own costs on appeal.
Mallano, P. J., and Rothschild, J., concurred.
NOTES
[*] Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.
[1] Roth is not a party to this appeal.
[2] All undesignated statutory references are to the Corporations Code.
[3] Respondents' interests are aligned. For the sake of brevity, when discussed in conjunction with one another, we will refer to respondents, collectively, as "New York Life," or "the Company."
[4] The minute order states the demurrer was sustained only as to two causes of action. This was clearly a clerical error, as evidenced by statements contained in the reporter's transcript, the notice of ruling prepared by New York Life (to which Oravecz did not object), and Oravecz's subsequent motion seeking reconsideration of the order sustaining the demurrer as to all three claims.
[5] A common law claim for breach of fiduciary duty under California law does not conflict with and is not preempted by federal law. (See, e.g., Capital Research & Management Co. v. Brown (2007) 147 Cal.App.4th 58, 67 [53 Cal.Rptr.3d 770]; Roskind v. Morgan Stanley Dean Witter & Co. (2000) 80 Cal.App.4th 345, 354, fn. 4 [95 Cal.Rptr.2d 258]; but see McKey v. Charles Schwab & Co. (1998) 67 Cal.App.4th 731, 741-742 [79 Cal.Rptr.2d 213] [finding implied preemption of claim for breach of fiduciary duty].) Because it appeared the trial court erred in relying on federal law, we invited the parties to submit letter briefs in advance of oral argument, addressing the choice of law issue. Both sides submitted briefs, which we have read and considered.
[6] As discussed below, under California law, the extent of a broker's discretion is just one factor to be reviewed to determine the scope of a fiduciary's duty. (Duffy v. Cavalier (1989) 215 Cal.App.3d 1517, 1536, fn. 10 [264 Cal.Rptr. 740] (Duffy).)
[7] Although New York Life opposed it, Oravecz was granted permission to amend and file the TAC to add two entirely new claims, "negligent hiring" and "negligent interference with prospective economic advantage." Oravecz asserts he should be given an opportunity to amend these claims as a matter of course, because they appeared for the first time in his fourth pleading. He is mistaken. (See Leader v. Health Industries of America, Inc. (2001) 89 Cal.App.4th 603, 612-613 [107 Cal.Rptr.2d 489], citing Code Civ. Proc., §§ 472, 473 [a litigant's leave to amend his pleading after a demurrer has been sustained is a matter of grace, not of right].)
[8] Specifically, in opposition to the demurrer, Oravecz asserted: "Roth presented a risk of physical harm to investors . . ., i.e., he might shoot investors, as he was negligent in use of a firearm." From there, Oravecz went on to argue that, "[t]his tremendous danger is even more austere than the danger that Roth's proven negligence would harm investors in other ways. Obviously, hiring an agent who might shoot an investor; then vouching for this agent as exhibiting `integrity, trust, and sound ethics'; and placing this person in a position wherein he is trusted with the handling [sic] investors' funds, is outright negligent hiring a problem waiting to happen."
[9] Oravecz makes a more substantive argument in his reply brief. However, absent a showing of good cause, we will not consider points raised for the first time in the reply, because respondents have not been given a chance to respond. (REO Broadcasting Consultants v. Martin (1999) 69 Cal.App.4th 489, 500 [81 Cal.Rptr.2d 639].)
[10] The record does not contain a reporter's transcript of the hearing on the summary judgment motion.
[11] This evidence was properly excluded on the grounds it is incomplete, irrelevant, lacks foundation and was not properly authenticated. Moreover, if the correspondence and advertisements collectively labeled "Exhibit 9," had been admitted, only one document contains even a vague connection between Tradex and New York Lifea fax cover sheet, containing the New York Life logo, that Roth used in June 2001 to communicate with someone named Paul Jennings regarding his Tradex account. This document has no bearing on Oravecz's assertion that Roth was employed by New York Life. No other document mentions or alludes to a relationship between Tradex and New York Life, or Roth's status as an employee of the Company.
[12] The "evidence" on which Oravecz relies to support his contention that Roth was an employee of New York Life was properly excluded. It was incomplete or irrelevant, lacked foundation and was not authenticated. The only remaining evidenceexcerpts from Roth's deposition testimonydoes nothing to advance Oravecz's claim that New York Life knew Roth was engaged in the sale of unauthorized product. The testimony to which Oravecz refers states only that, at some point after he got his trader's license, Roth became interested in investing his own funds in a "spot currency trading investment," but was concerned it might impact his securities license. He asked his supervisors if such "trading was a security" and "was assured it was not," and that such investments would not create any problem with his license. Tradex is never mentioned.
[13] Section 25507, subdivision (a) establishes the statute of limitations for violations of section 25503 (sale of unqualified securities), a claim not at issue here.
[14] We are aware Code of Civil Procedure section 437c, subdivision (m)(2) precludes affirmance of summary judgment on a ground not relied upon by the trial court, if the parties are not given an opportunity to submit supplemental briefs. That rule does not apply here. The claim was dismissed because it was barred by a two-year statute of limitations. That the trial court mistakenly referred to the wrong statute of limitations as authority for the correct proposition of law is immaterial.
[15] In supplemental briefing, New York Life, relying upon Code of Civil Procedure section 475, has argued that the doctrine of harmless error should apply here and the judgment be affirmed, because the trial court ruled in its favor on the issue of agency in the motion for summary judgment. New York Life contends that plaintiff suffered no substantial injury, and no different result would have been probable if the error had not occurred. We reject that argument. The issue presented to the trial court was whether plaintiff had stated a cause of action for breach of fiduciary duty. The trial court erred in ruling that it did not state a cause of action, and sustained the demurrer without leave to amend. The trial court was not presented with, nor did it rule upon, the issue whether summary judgment/summary adjudication should be granted to New York Life on this cause of action, and that issue, therefore, is not properly before us.